## Case No. 11,878.
Case of ROBBINS.
[See Case No. 16,175.]

ROBBINS' CASE. See Case No. 16,175.

## Case No. 11,879.
Ex parte ROBBINS.
[2 Gall. 320.] [1]
Circuit Court, D. Rhode Island. Nov. Term, 1814.

DISTRICT ATTORNEY — FEES — DISTRIBUTION —ADMIRALTY PRACTICE—DELIVERY ON BAIL.—NOTICE.

1. In what manner the fees taxed for the district attorney are to be distributed, where part of the services have been performed in the time of one district attorney, and part in the time of his predecessor.
[Cited in Jerman v. Stewart, 12 Fed. 278.]

[1] [Reported by John Gallison, Esq.]

2. No delivery of property on bail can legally be made, in cases where the United States are a party, without due notice to the district attorney, that he may have a hearing before the court.

3. Quære, if a delivery on bail can be ordered by the court in vacation before the return term of the process.

[This was a claim for attorney's fees.]

STORY, Circuit Justice. This cause, though of great simplicity as to principle, has been loaded with voluminous documents by the inconsiderate zeal of the parties. On certain informations pending in this court against the ship Euphrates and cargo, the ship Neptune and cargo, the ship Francis and cargo, and the schooner Two Brothers and cargo, a considerable sum of money has been paid into court for the taxable costs due to the district attorney of the United States in these causes. Of this sum six seventeenths have been paid over without opposition to Mr. Howell, the late district attorney and present district judge. The residue is claimed by Mr. Robbins, the present district attorney, and this claim is resisted by the late district attorney, and also by Mr. Hazard, who severally claim the same fees for their own use.

The informations were all filed by Mr. Howell, as district attorney, returnable to the October term of the district court of Rhode Island in 1812. In consequence of the disability of the then district judge, that term was not holden, and the court was, by a written order of the judge, adjourned by the marshal without day. Previous to this time, in pursuance of a certiorari under the act of March 22, 1809, c. 94 [2 Story's Laws, 1121; 2 Stat. 534, c. 27], all the causes pending in the district court were certified to the November term of the circuit court of the same year. The district judge died on the 3d day of November, 1812, and in consequence thereof, the causes were, at the same November term, remanded to the district court. They were accordingly entered at the February term of the district court in 1813, and thence continued to the next May term of that court, when they were again certified to the circuit court, according to the act of September 24, 1789, c. 20 [1 Stat. 73], on account of the district judge having, as district attorney, been of counsel in those causes. The commission of Mr. Howell bears date the 17th day of November, 1812, and Mr. Robbins was appointed district attorney on the 9th day of December following.

At the June term of the circuit court in 1813, the causes were disposed of upon remissions granted by the treasury department of the United States, and the taxation of seventeen dollars as costs on each claim was allowed; and at the ensuing November term of the same court, the money paid and to be paid on account of those fees was, by consent of the parties, ordered to be deposited in the registry, to abide the further order of the court. After the informations were filed, and before the return term, in the case of The Euphrates, about sixty-six claims were filed; in that of The Neptune about fifty-eight claims were filed; and in that of The Francis about fourteen claims were filed, upon all which a delivery on bail was allowed. The residue of the claims in these cases, and all the claims in The Two Brothers, were either not filed, or not acted upon, until after the appointment of Mr. Robbins as district attorney. Prize allegations were also filed against the property not included in the foregoing informations, in the cases of the ships Francis and Euphrates, and claims were interposed therein by the United States. These claims of the United States were filed in the circuit court by Mr. Hazard, at the request of Mr. Robbins, with the assent of the court, Mr. Robbins having been of counsel for the captors in those cases. For his services in this behalf Mr. Hazard has been compensated.

Such is a summary history of the transactions, out of which the conflicting titles before the court have arisen.

In respect to the claim of Mr. Hazard, it may be at once dismissed from the cause. Whatever he did was as a substitute or agent under Mr. Robbins, and he could acquire no legal or equitable right to the taxable costs in these informations, which belong de jure to the district attorney. Mr. Hazard never was de facto district attorney, and therefore cannot legally interfere to bar the rights of his principal.

In respect to the other parties, it is contended by Mr. Robbins, that he is entitled to all the remaining fees, because nothing was done by Mr. Howell as district attorney. On the other hand, it is contended by Mr. Howell, that all these fees accrued to him previous to the appointment of Mr. Robbins. In my judgment, neither party is right in this statement. Mr. Howell certainly had the exclusive management of these informations until the appointment of Mr. Robbins. During this time, a large portion of the property was claimed, appraised, and delivered on bail. Admitting that the district court can deliver property on bail in vacation, and before the return term of the process, (which admits of very serious doubts,) no delivery on bail could properly be made without notice to the district attorney, and a hearing before the district judge. The United States have an unquestionable right to be heard as to the propriety of a delivery on bail, the appointment of appraisers and sufficiency of the bail, and no delivery ought to be made until all objections have been heard and considered by the district judge. It is to be presumed, that all this was done in these cases, either in fact, or informally, by the assent of the parties. For these important services, Mr. Howell is entitled to a compensation, for they were necessarily connected with the case. Further, Mr. Howell represented the United

States at the November term of the circuit court, and although the causes were not then finally decided, yet he was obliged to attend, to assert the rights of the United States, and to have the causes regularly disposed of. These were essential services, and there can be no doubt, that they are included in the taxable costs. On the other hand, there is as little correctness in the suggestion, that all the professional labor was performed before the appointment of Mr. Robbins. Independent of his attendance in various applications for the delivery of the property on bail; at the February and May terms of the district court, and at the June term of the circuit court in 1813, Mr. Robbins, as the district attorney, had the sole control, management and disposal, of all these causes. He was bound to represent the United States in court, to see that proper continuances and other orders were entered on the records, and to take care that no prejudice should arise to the United States from any laches or default. For such services every counsellor receives an honorable fee, not merely pro opere et labore, but as a quiddam honorarium for professional responsibility. This is not all. Applications were made for remissions, in all or nearly all of these various claims, to the treasury department, and, as an incident of office, it became the duty of Mr. Robbins to attend to the petitions and evidence before the district judge. I do not say, that this was a necessary appendage of the original causes, for which costs were to be taxed; but it was a collateral labor, which must have required great and diligent attention. When the remissions were obtained, it was the indispensable duty of the district attorney to examine them, to exact a fulfillment of the conditions, and to prevent any cause from being, by mistake, discontinued in court, which was not included in the terms of the remissions. This was a highly responsible duty; and required diligence, and patience, and accuracy. How then can it be contended with any propriety, that every professional labor was performed before Mr. Robbins succeeded to the office? It is manifest, then, that both of the respectable gentlemen before the court are partly in the right, and partly under a mistake. Each of them has an equitable, as well as legal, title to a portion of the fees now in the registry.

The only remaining consideration is, how these fees are to be apportioned. The fees allowed were seventeen dollars on each claim, viz. for the interrogatories five dollars, for the libel or answer six dollars, and for all other services, six dollars. No interrogatories or answers were in fact filed; for all parties, for their mutual convenience, seem to have waived any formal proceedings. The courts have, in such cases, adjusted the taxable costs in the same manner, as if these proceedings were formally entered on the record apud acta. But not having been in fact filed by either party, neither Mr. Howell nor Mr. Robbins can strictly claim the fees, accruing from these services, to his separate use. Nothing more then can be done, than to make an equitable apportionment of the whole fees, according to some artificial estimate of their comparative services in the several causes, in which the costs were taxed. Upon a careful consideration of the subject, I am of opinion, that complete justice will be done to the parties for all their services, for which costs could be taxed, by allowing to Mr. Howell five elevenths, and to Mr. Robbins six elevenths, of the fees now remaining in the registry, the whole sum being, as the clerk has certified, 1485 dollars.