## WADDELL *vs.* MORRIS.

Where an allowance is made under the revenue laws to a *marshal* of the Uni-ted States, as a compensation for the *custody of property* seized and de-tained under an order of the court, and the property in respect to which the allowance is made, had for a portion of the time been in the keeping of a predecessor in office of the marshal to whom the allowance was made, *it was held* that an *action at law* could not be maintained by the *former marshal* against the *present marshal*, for a recovery of a proportionate amount of the sum allowed and paid.

*It seems*, that the remedy of the former marshal, if any, is by invoking the exercise of the equitable powers of the court in which the services were rendered.

ERROR from the superior court of the city of New-York. Morris sued Waddell in the court below, to recover a propor-tion of an allowance made to the latter, as *marshal* of the south-ern district of New-York, as a *custody fee* upon certain jewels alleged to belong to, and claimed in behalf of the Princess of Orange, which had been seized by Morris, while *marshal* of the same district, and which remained in his possession from 23d July, 1831, until the 16th or 17th November of the same year, at which time he was succeeded in the office of marshal by Waddell, and when he delivered the jewels to his succes-

sor, in whose custody they remained until the 20th January, 1832, when the jewels were delivered to the Minister of the Netherlands, and a *custody fee* of *five per cent.* upon the appraised value of the jewels, amounting to $1092,50 paid to Waddell. The custody fee was taxed by Judge Betts, of the district court of the United States, to whom a bill was presented for taxation by Waddell, including several items furnished by an agent of Morris, to whom application was made for that purpose, and which items did not specify any charge for the custody of the jewels ; it appeared that Morris at the time was not aware that a custody fee might in such cases be legally charged. While the jewels were under the control of the marshals, they were deposited in the banks in the city of New-York ; and during the time they were in the custody of each they were removed from the banks to the police office, and to other places, for the purpose of appraisement, and carried back to the banks. Judge Betts, who was examined in respect to the taxation, stated that, in the taxation of the bill, *time* was not taken into consideration at all ; he taxed it as the marshal's bill. The idea of there being a *division* to be made did not enter into his mind, and he did not intend to make any *apportionment* between the marshals. He taxed in this, as in other cases, with reference to the vouchers before him. The question brought to his mind was, what was a fair compensation, under the circumstances of the case, for marshal's fees? and there being no opposition from the attorney of the claimant, he made the allowance of five per cent. commissions for custody fees, and for risk and trouble, without reference to any apportionment, or to the former marshal's services. The judge who presided at the trial charged the jury, that in judgment of law, the allowance of the fee for the custody of the property in question, made by the district judge, was for the official duty performed by the marshal during the whole period for which the property was retained by the order of the court ; and that the *former marshal was entitled to his proportion of the fee, according to the time during which the property was kept by him,* unless the jury, from the evidence, should believe that the allowance was made by the district judge, specially, for the services rendered by the *present marshal ;* unless the jury

should so find, they ought to find a verdict for the plaintiff for the proportion of the custody fee. The jury found for the plaintiff, with $675 damages. The defendant having excepted to the charge of the judge, sued out a writ of error.

*S. Sherwood & G. Griffin*, for the plaintiff in error.

*S. P. Staples*, for the defendant in error.

*By the Court*, SUTHERLAND, J. The custody fee to the marshal was taxed in this case, under the 4th section of the act " for regulating process in the courts of the United States, and providing compensation for the officers of said court," &c. 2 *vol. U. S. Laws*, 301, *Bioren & Duane's ed.* That section, so far as it relates to this subject, is as follows: " The marshal shall have the custody of all vessels and goods seized by any officer of the revenue, and *shall be allowed such compensation therefor as the court may judge reasonable.*" The law, it will be perceived, prescribes no rule or standard of compensation for this service. It does not direct that so much per day or per month shall be paid, nor that the marshal shall have a given per centage upon the appraised value ; but it leaves the matter entirely with the discretion of the court, in which the proceeding is pending. The marshal shall have such compensation for the service *as the court may judge reasonable.* In determining what would be a reasonable compensation, it is evident that the nature of the subject and all the circumstances of the case are to be taken into consideration. The act extends to *vessels and goods*—terms sufficiently comprehensive, and undoubtedly intended to cover every species of property which could be seized under the revenue laws, and the custody of which would devolve upon the marshal. The compensation should be proportioned to the trouble, the hazard and the expense which the custody of the subject imposes upon him. Now it is obvious that in relation to the same subject the hazard and trouble of keeping it may vary very much at different periods, while it remains in his custody. It may be necessary at one period to remove it from place to place, and thus expose it to loss or injury, while, for the residue of the time, it may re-

main safely locked up, without incurring damage, or giving trouble. This may have been peculiarly so in relation to the jewels which were the subject of custody in this case. As long as they remained deposited in banks, they were very little exposed, and the marshal had but little trouble or responsibility in relation to them. The principal hazard was incurred in removing them from the bank to the court and the police office, and back again to the bank, during the process of the investigation and trial. The mere length of time during which they were in the custody of the marshal, it appears to me, would not afford the court satisfactory means of determining the amount of the custody fee to be allowed. In this case they were in the possession of the two marshals from July to January, a period of six months, for which $1092 were allowed as a custody fee. Is it possible for us to say, from the facts in this case, that *more* would have been allowed, if they had been in custody for a year; or less, if they had been in custody but three months? The judge who taxed the bill did not undertake to state the precise principle upon which the allowance was made; and I can readily imagine that it would have been exceedingly difficult for him to have done so. But he expressly says that the length of time that they were in custody was not taken into consideration at all, in fixing the allowance. If it did not enter into the determination of the aggregate sum to be allowed, can it be the proper criterion for the division of that sum between the two marshals?

In order to entitle the plaintiff to recover in this action, it is incumbent upon him to show, 1. That this custody fee, which has been taxed and paid to the *defendant*, covered services which had been performed by the *plaintiff*, and that therefore, *ex æquo et bono*, he was entitled to a portion of it; and 2. He must show some legal rule by which this fund can be apportioned or divided. This is an action at law, and the plaintiff must establish a legal title and recover accordingly. He must make out a case upon which a jury, under the direction of the court, can say that a given portion of the fund was received to his use. It is not sufficient for him to establish a probable general equity. Neither a court of law nor a jury

can decide the right of parties by conjecture. The rule of apportionment, given by the court to the jury in this case, was entirely arbitrary. It has already been shown that it derived no countenance from the *act* under which the allowance was made, and that the judge who taxed the bill had no regard to *time* in fixing the custody fee. It was adopted by the court below, undoubtedly because it was the only rule of apportionment which could be suggested ; but that fact is not, of itself, sufficient to show that it is the true legal rule. It ought, on the contrary, I think, to have led the court to the conclusion that the plaintiff could not recover in an action at law ; that his remedy was by an application to the *equitable powers of the court in which the services were rendered,* and by which the allowance was made to the defendant. Such was the application in *Ex parte Robbins,* 2 *Gall.* 320. Mr. Howell, as district attorney of Rhode-Island, had filed certain informations against several vessels and their cargoes. While the suits were pending, Mr. Howell was appointed judge of the district, and Mr. Robbins succeeded him as district attorney, and conducted the suits until they were finally disposed of. He procured the costs to be taxed ; which, by consent of the parties, were paid into court, to abide its further order ; and a special application was made to the court, to dispose of the fund. Each party contended that he was entitled to the whole. It appears, from the case, that the parties to the suits in which the costs accrued, for their mutual convenience, waived all formal proceedings, agreeing, however, that the costs should be made up and taxed as though the proceedings had been strictly technical and formal. Judge Story, in reference to this feature of the case, remarks, that the services charged and taxed not having actually been performed by either Mr. Howell or Mr. Robbins, neither could strictly claim the fees accruing from those services to his separate use ; and that nothing more could be done than to make an equitable apportionment of the whole fees, according to some artificial estimate of their comparative services in the several causes in which the costs were taxed. He accordingly, upon such view of the case, allowed Mr. Howell 5, and Mr. Robbins 6 elevenths of the costs.

Where the question arises in relation to services for which a specific fixed compensation is given by the fee bill or by law, there can be no difficulty in apportioning the costs, where there is a change in the office pending the suit. Each officer will be entitled to the fees attached to the services which each may have performed; and where they have been settled by taxation, and the whole amount has been received by the one, and the suit is finally terminated by judgment, an action at law may be maintained by the other for his proportion. It was held, however, in *Emerson* v. *Lashley*, 2 *H. Black.* 248, that no action would lie in that court to recover interlocutory costs, ordered to be paid by a rule of an inferior court; although it was shown that the defendant had removed beyond the jurisdiction of the inferior court, and could not therefore be reached by an attachment. A distinction was taken between interlocutory costs and final costs, incorporated into the judgment. In *Buel* v. *Van Ness*, 1 *Wheat.* 74, and 8 *id.* 312, it was decided that under the 91st section of the duty act of 1799, ch. 123, the share of a forfeiture, to which the collector of the district is entitled, was to be paid to the person who was the collector in office at the time the seizure was made, and not to his successor in office, at the time of condemnation and the receipt of the money. The language of the act is, "that one moiety shall be for the use of the United States, and the other moiety shall be divided between, and paid in equal proportions to the *collector* and *naval officer* of the district, and *surveyor* of the port," &c. It was held that the collector who made the seizure acquired thereby an inchoate right, which became consummated by the subsequent condemation, which vested in him an absolute title to his share of the forfeiture; and that this would be the case, although he was removed from office, and died the day after the seizure was made. In *Jones* v. *Thair's Executor*, 2 *Wheat.* 475, it was held that the right to *personal penalties* attached upon suit brought, whether the collector died before judgment or not. These were cases where the question of apportionment did not arise. The whole interest, according to the construction given to the act, vested in the collector who made the seizure *in rem*, or com-

menced the suit for a *personal penalty.* They proceeded upon the principle that the plaintiff had an absolute vested right, by virtue of the statute, to the fund for which the suits were brought. The difficulty in this case is, that the amount of the custody fee and title to it depends entirely upon the allowance of the United States court. The plaintiff certainly has not shown affirmatively that any portion of this fee has been allowed to him. The charge, as presented to the district judge for taxation, was a charge for the services of Marshal *Waddell,* and so it was taxed or allowed by the judge. The plaintiff, when called upon for his charges by Waddell, to be inserted in his bill for taxation, presented no claim to a custody fee. It is certain, then, that Waddell had no reason to suppose that Morris would claim any portion of this fee, and that when he presented it for taxation, he did not suppose that his bill embraced any claim for this service on behalf of Morris. I cannot accede, therefore, to the correctness of the charge, that in judgment of law the allowance of the custody fee was for the official duty performed by the marshal, during the whole period for which the property was retained by order of the court. But if this were so, the difficulty, and, as it seems to me, the insuperable difficulty, remains, that the law in this case furnishes no rule by which this common fund is to be apportioned between these two officers. It appears to me to fall within the principle of the case, *Ex parte Robbins,* before referred to, and that the distribution can be made only by the interposition of the equitable powers of the court in which the costs accrued. Whether that court has lost its summary equitable jurisdiction over the fund, or the parties, by the delay in asking its interposition, or whether the plaintiff has a remedy in any other form, it is not for us to determine. He cannot sustain this action upon the facts disclosed in this case.

Judgment reversed.