## SUPREME COURT.

JOSEPH W. SICKLE *et al*, agt. PELATIAH J. MARSH *et al.*

The defendants, on the 25th of April 1870, at Troy, N. Y., wrote to Messrs Allen & Co. of New York, plaintiffs, a letter, of which the following is a copy: "Troy, April 25, 1870. Messrs Allen & Co. New York. Gents. The bearer, Mr. Leonard Wager, Troy, N. Y., is going to start a pedling route to sell cigars and tobacco. He wishes to buy his goods of your firm, if you will give him a liberal credit. We, the undersigned, will be his security to the amount of $1,000. Signed, T. S. BANKER, P. J. MARSH."

Wager, between April 26, 1870, and August 12, 1870, purchased of plaintiffs, at different days, cigars and tobacco, amounting in all to $2,178.55. The firs tsale amounted to $786.78, and on several different days during said term paid on account sums of money amounting in all to $1,412.28. At no time did his indebtedness exceed $1,000. The unpaid balance for which this action was brought was $766, 27, due on average time, Sept. 12, 1870.

*Held*, that this letter was a *continuing guaranty*, and rendered the defendants liable until notice to the contrary.

*Rensselaer Circuit, Feb.*, 1872.
ACTION tried without a jury.

A. B. PARMENTER, *for plaintiff.*
COWEN & BOIES, *for defendants.*

On the 25th of April, 1870, the defendant, Marsh, and one Banker, now deceased, (for whom his executrix has been substituted,) wrote a letter; of which the following is a copy:

"TROY, *April* 25, 1870.

"Messrs. Allen & Co., New York. Gents. The bearer, Mr. Leonard Wager, Troy, N. Y., is going to start a pedling

route to sell cigars and tobacco. He wishes to buy his goods of your firm if you will give him a liberal credit. We, the undersigned, will be his security to the amount of one thousand dollars.

"Signed,     T. S. BANKER

"P. J. MARSH."

This was, by Marsh and Banker, delivered to Leonard Wager and by him taken to New York and on the following day delivered to the plaintiffs, composing the firm of Allen & Co. It was at that time stated to them that Wager had no means, and that Marsh and Banker were good.

On the 26th day of April, 1870, and on several days afterward, the last being Aug. 12, 1870, the plaintiffs sold to Wager, cigars and tobacco amounting in all to $2,178.55. The first sale amounted to $786.78. On the 13th day of May, 1870 and on several days afterward, the last being Aug. 11, 1870, Wager paid on account, sums of money varying from $100 to about $240; and amounting in all to $1,412.28. At no time did his indebtedness exceed $1000. The unpaid balance is $766.27; which, by average, was payable Sept. 12, 1870 and this the plaintiffs seek to recover. The question is whether the paper was a continuing guaranty.

LEARNED, J.—The principle is settled that instruments of this kind are to have a liberal construction. "If the language is ambiguous, and admits of two fair interpretations, and the guarantee has advanced his money on the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor." (*Lawrence* agt. *McCalmont*, 2 *How. U. S.*, 426.) It is true that, when the meaning of the guaranty is ascertained, the liability of the guarantor is not to be extended by implication. This is what is meant by saying that a guaranty is *strictissimi juris.* (*Dobbin* agt *Bradley*, 17 *Wend.* 422.)

But where the question is as to the meaning of the written language, there is no difference between the contract of a surety and that of any other party. The rule that the words of an instrument are to be taken most strongly against the party who signed it, applies to guaranties. (*Mason* agt. *Pritchard,* 12 *East.,* 227; *Gates* agt. *McKee,* 13 *N. Y.,* 232; *Douglas* agt. *Reynolds,* 7 *Peters,* 113.

Now in construing this paper it must be remembered that the guarantors, by notice to the guarantees. could at any time prevent the incurring of any further liability.

The paper shows that Wager was about to carry on a business, and that his purchases were not to be for his private use. The defendants lay stress on the word "start," and insist that it was only for the first purchases that the credit was to be given. They say that after Wager had once purchased goods to the amount of $1,000 he could pay cash for his future purchases out of his sales.

But starting a pedling route certainly implies carrying it on. Wager was to buy "his goods," which means the goods he would use in the business. And it is hardly to be expected that out of the profits of the sales he could keep up his stock and also pay off his first purchases.

The defendants cite *Fellows* agt. *Prentice* (3 *Denio,* 512). But this case in the supreme court was decided on the ground that the plaintiff had extended the time of the purchase and had thus discharged the guarantor. And this seems to have been the only point decided in the court of errors. An examination will show that the head note on the subject of continuing guarantees is not sustained by the case.

The two other cases of *Whitney* agt. *Groot* (14 *Wend.,* 82), and *Rogers* agt. *Warren* (8 *Johns.,* 119), have this difference from the present, that no limit to the amount of credit to be given was named.

The language of this guaranty is that the $1,000 is the

Sickle agt. Marsh.

limit of the security, not of the purchases. And it seems to me that the reasonable construction is that the guaranty continued until notice to the contrary. This is sustained by *Gates* agt. *McKee,* (13 *N. Y.,* 232,) and *Rindge* agt. *Judson,* (24 *N. Y.,* 64.)

Decision for plaintiffs.