[S. F. No. 1323. Department Two.—March 28, 1900.]

## B. N. SCRIBNER & CO., Appellant, v. ELIZABETH M. SCHENKEL, Executrix, et al., Respondents.

CONTRACT TO PAY FOR HOGS PURCHASED BY THIRD PERSON—ORIGINAL OBLIGATION—ABSOLUTE GUARANTY—NOTICE OF ACCEPTANCE—PRINCIPAL DEBTOR.—A contract by the defendant to pay for all the hogs which a third person should buy from the plaintiffs is an original obligation, and an absolute guaranty which requires no notice of acceptance to the guarantor, but, when accepted and acted upon by the plaintiffs by selling hogs to such third person upon the faith of the absolute promise of the defendant, he becomes the principal debtor of the plaintiffs, and liable as such.

ID.—ABSOLUTE SALE TO THIRD PERSON—DELIVERY AND PAYMENT—CONCURRENT OBLIGATIONS.—Upon an absolute sale of a specified number of hogs by the plaintiffs to such third person at a fixed price, with delivery upon demand of the purchaser, the delivery and payment of the purchase price were concurrent obligations.

ID.—BREACH OF CONTRACT—OFFER OF DELIVERY—SALE IN MARKET—MEASURE OF DAMAGES.—Where the defendant, after payment for a portion of the hogs sold, declined to pay for any more of them, he thereby put himself in default, in breach of his contract, and plaintiffs became entitled to enforce the contract without further offer of delivery, and might, without any tender of delivery to the purchaser, sell the remainder of the hogs at the actual market price, at the time of sale, and recover from the defendant as the measure of damages for the breach of his contract, the difference between the contract price of the undelivered hogs and the price actually received in the market, in the absence of fraud, collusion, or unfair dealing.

ID.—MARKET VALUE AT DATE OF PURCHASE—IMMATERIAL ISSUE.—An issue as to the reasonable market value of the hogs at the date of the purchase by the third person is immaterial, and no finding need be made thereupon.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Hilborn & Hall, and Charles L. Donohoe, for Appellant.

The promise of the defendant was an original obligation and an absolute guaranty, and made him the principal debtor,

without the necessity of notice of acceptance. (Civ. Code, sec. 2794, subd. 2, sec. 2795; *Hetfield v. Dow*, 27 N. J. L. 440; *Chase v. Day*, 17 Johns. 114; *Bales v. Starr*, 6 Ala. 697; *Patton v. Hassinger*, 69 Pa. St. 311; *Reif v. Paige*, 55 Wis. 496; 42 Am. Rep. 731; *Harson v. Pike*, 16 Ind. 140; *Douglass v. Howland*, 24 Wend. 35; *Powers v. Bumcratz*, 12 Ohio St. 273; *Smith v. Dann*, 6 Hill, 543.) In the sale made upon faith of the promise, delivery and payment were concurrent conditions. (Civ. Code, sec. 1784; *Beauchamp v. Archer*, 58 Cal. 431; 41 Am. Rep. 266.) The notice that the defendant would not pay the price in accordance with his contract was a breach of the contract, and waived further tender, or offer of performance. (Civ. Code, sec. 1440.) The measure of damages was the excess of the price over the market value of the undelivered hogs. (Civ. Code, sec. 3311, subd. 2; *Hale v. Trout*, 35 Cal. 246; *Haskell v. Mc-Henry*, 4 Cal. 411; *Upstone v. Weir*, 54 Cal. 124.)

Julius Reimer, and R. M. Royce, for Respondents.

The acceptance of a guaranty should be communicated to the guarantor to complete the contract (*Davis etc. Co. v. Richards*, 115 U. S. 524-27; *Lee v. Dick*, 10 Pet. 482; *Adams v. Jones*, 12 Pet. 207; *Edmondston v. Drake*, 5 Pet. 624; *Newman v. Streator Coal Co.*, 19 Bradw. [Ill. App.] 594; *Bell v. Kellar*, 13 B. Mon. 381; *Lawton v. Maner*, 9 Rich. 335; *McIver v. Richardson*, 1 Maule & S. 557; *Mozley v. Tinkler*, 1 Cromp. M. & R. 691.) Consent of the parties to a contract must be communicated by each to the other. (Civ. Code, sec. 1465; *Loaiza v. Superior Court*, 85 Cal. 11; 20 Am. St. Rep. 197.) There was no default of Crockett, and the guarantor could not be liable without his default. (Civ. Code, sec. 2807; *First Nat. Bank v. Babcock*, 94 Cal. 373; 28 Am. St. Rep. 94.) No title was acquired to the undelivered hogs under the agreement to sell. (*Blackwood v. Cutting Packing Co.*, 76 Cal. 212; 9 Am. St. Rep. 199; Benjamin on Sales, sec. 318; *Foster v. Ropes*, 111 Mass. 10; Civ. Code, sec. 1661.) The only proper measure of damages for breach of the guaranty is the actual damage suffered. (Civ. Code, sec. 3300.) The contract contemplated the purchase of goods at market rates at the time of the purchase. There was a material issue as to the market rates at that time, upon which there is no finding.

HENSHAW, J.—The appeal is from the judgment. The contention of appellant is that under the findings the judgment should have been for fourteen hundred and thirty-five dollars and thirty-four cents, in addition to the sum of two hundred and seventeen dollars and fifteen cents, the amount for which judgment was given.

The facts admitted or found by the court are the following: One J. R. Crockett was in Glenn county, buying sheep and hogs. He entered into negotiations with plaintiff for the purchase of some of the latter. On the eleventh day of October a letter was received by the plaintiffs from the defendant, in which defendant "agreed with plaintiffs to pay for all the hogs which J. R. Crockett should buy." Thereafter, on the sixteenth day of October, while the agreement of defendant was in full force and effect, and relying wholly upon the agreement, and giving credit solely upon the assurance of the agreement, plaintiffs sold to J. R. Crockett and J. R. Crockett bought of plaintiffs eight hundred head of hogs. The transaction was evidenced by the following writings, signed by the parties:

"Bought 800 head of hogs of B. N. Scribner & Co. to be delivered as they are fit to ship at $4.75 will average about 200 not later than Dec. 10, 1894.

"(Signed)   B. N. SCRIBNER & Co."

"I bought of B. N. Scribner & Co. eight hundred head—800 —of hogs to be delivered as they are fit to ship, at $4.75 per hundred. They are all to be delivered not later than the 10th day of December, A. D. 1894. Average of 200 lbs. per hog.

"(Signed)   J. R. CROCKETT."

Thereafter, upon October 24th, seventy-six head of hogs, and on October 26th, eighty head of hogs, were delivered by plaintiffs to Crockett, and drafts drawn therefor on defendant in favor of plaintiffs were paid by defendant. Upon November 5th, fifty-five head of hogs were delivered to Crockett. A draft was presented to defendant which he declined to pay, assigning as a reason that he had no funds in his possession belonging to Crockett. Subsequently, five hundred dollars upon account of this sum was paid by Crockett, leaving a balance of two hundred and seventeen dollars and fifteen cents unpaid. Upon the dishonor of this draft by defendant, plaintiffs made inquiry,

and, in response, were informed that defendant would not pay ·
for any more hogs bought by Crockett, and defendant has since
that time refused to pay for any of the hogs, and has refused to
receive any of them.  Plaintiffs thereafter sold the remainder of
the hogs upon the market at the market price, and at a loss from
the contract price of fourteen hundred and thirty-five dollars
and thirty-four cents.  Before selling the hogs, and before com-
mencing this action, plaintiffs demanded of defendant that he
receive and pay for the hogs, but he declined so to do.  The
court rendered judgment in favor of plaintiffs for two hundred
and seventeen dollars and fifteen cents, the balance of the dis-
honored draft, but held defendant not to be liable for the four-
teen hundred and thirty-five dollars and thirty-four cents, loss
upon the sale of the remainder of the hogs.

The agreement of defendant was to pay for all the hogs
Crockett might buy.  The plaintiffs having parted with value,
having sold the hogs, and having given credit, as the court finds
solely upon the security of this promise, it became an original
obligation of the promisor—not a mere offer of guaranty, but
an absolute guaranty (Civ. Code, sec. 2794, subd. 2); and no
notice of acceptance to the guarantor was necessary.  (Civ.
Code, sec. 2795.)  Defendant by his absolute promise accepted
and acted upon by plaintiffs became, as to plaintiffs, the prin-
cipal debtor, and liable as such.  (*Hetfield v. Dow*, 27 N. J. L.
440; *Bates v. Starr*, 6 Ala. 697; *Patton v. Hassigner*, 69 Pa. St.
311; *Reif v. Paige*, 55 Wis. 496; 42 Am. Rep. 731; *Harson v.
Pike*, 16 Ind. 140; *Duval v. Trask*, 12 Mass. 156; *Douglass v.
Howland*, 24 Wend. 35; *Powers v. Bumcratz*, 12 Ohio St. 273;
*Smith v. Dann*, 6 Hill, 543.)  The contracts between plaintiffs
and Crockett constitute a sale absolute at a fixed price, with
delivery at the demand of the purchaser.  The delivery upon
the one hand, and the payment of the purchase price upon the
other, were concurrent obligations.  When after payment for
some of the hogs defendant informed plaintiffs that he declined
to pay for the shipment already made and would pay for no
more of the hogs sold, he put himself in default, and plaintiffs
became entitled to enforce the obligation without further offer
of delivery upon their part.  (Civ. Code, sec. 1440.)  Plaintiffs,
in other words, were entitled to do precisely as they did do—sell

the remainder of the hogs at the market price, credit the defendant with the amount of the sale, and go into court to recover the difference between the amount of such sale and the contract price. It was not necessary for plaintiffs to tender the hogs to Crockett. The defendant was their principal debtor, and his refusal further to proceed with the contract amounted to a breach of it, and made a tender unnecessary.

We think it clear under the findings, therefore, that the plaintiffs were entitled to a judgment in addition to that which they received of fourteen hundred and thirty-five dollars and thirty-four cents, the difference between the contract price of the undelivered hogs and the price at which they were actually sold upon the market. But against this respondent urges that a new trial should be awarded for the failure of the court to find upon an allegation of the complaint denied by the answer. The allegation was to the effect that the market value of hogs upon October 16, 1894, the date of the purchase by Crockett, was four dollars and seventy-five cents per hundred. The answer denying this alleges that three and three-eighths dollars per hundred pounds was the reasonable value of the hogs at that time. We do not regard the issue thus joined as at all material to the determination of the case; and, consequently, the failure of the court to find upon it is likewise immaterial. Defendant's promise was to pay for the hogs which Crockett might buy, and, of course, to pay for them at the purchase price. If deceit, fraud, or collusion, had been charged in the answer, to show that Crockett and plaintiffs had agreed upon a purchase price higher than the prevailing market rate to defraud defendant, the question would at once become of consequence. But no unfair dealing is charged or intimated, and Crockett himself was a professional buyer of hogs, traveling through the country for that purpose. Defendants, moreover, accepted and paid several of the drafts for the purchase price of the hogs at the contract price. The measure of damage, therefore, is the difference between the contract price of the hogs and the price at which they were disposed of in open market.

It is ordered that the trial court modify its judgment by awarding plaintiffs the additional sum of fourteen hundred and thirty-five dollars and thirty-four cents.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.