[L. A. No. 2704. Department One.—September 6, 1911.]

## GEORGE M. PEARSON, Respondent, v. J. G. McKINNEY, Administrator with the Will Annexed of the Estate of E. E. Hendrick, Deceased, Appellant.

SALE—CONTRACT FOR FUTURE DELIVERY—INABILITY TO PROCURE GOODS—UNCONDITIONAL AGREEMENT FOR SALE—PERFORMANCE WHEN NOT EXCUSED.—Where one makes an unqualified agreement to sell goods to be delivered at a fixed time, or on demand of the buyer within a stated period, and it is inherently possible to obtain the goods, the fact that the seller may have expected to manufacture the goods himself, or 'to procure them from a certain source, and has not been able to complete or obtain them when delivery is due, does not excuse performance. In that event, his contract being unconditional and unqualified, he must go into the market, if necessary, and obtain the goods, and he will be liable in damages for non-delivery.

ID.—CONDITIONAL CONTRACT FOR SALE—DELIVERY DEPENDENT UPON HAPPENING OF PRECEDENT CONDITION—PERFORMANCE WHEN EXCUSED.—Where, however, the contract is not a general undertaking to sell the goods, which the seller is to have ready at all events when delivery is due, but is a contract to sell a specified article when it grows to a specified size or age, or a certain number to be selected out of a particular larger lot or to be produced from a specified source, or to be prepared in a manner to be afterwards prescribed by the buyer, a different rule prevails. The sale and delivery are then made to depend upon the happening of the precedent conditions; and until they have occurred, there is no obligation upon the seller to deliver, unless their non-occurrence was occasioned by his fault. If they do not occur, or their occurrence becomes impossible, without his fault, he is excused from performance. Likewise, if the occurrence is delayed without his fault, the time of performance is postponed accordingly.

ID.—CONTRACT FOR SALE OF TREES OF FIXED SIZE—SELECTION OF VARIETIES BY PURCHASER—NOTICE OF SELECTION—BUDDING BY SELLER AFTER NOTICE.—The latter rule is applicable to a contract whereby the seller agrees to sell twenty-five thousand citrus trees, of a size fixed by the contract as standard, to be grown by him from small plants and to be budded by him to certain varieties, after notice from the purchaser as to the varieties he would select in buying, to

be given one month before the budding was to begin, and the delivery of which was not to be made until after the trees were one year old from the budding, and had grown to the size defined by the contract as standard.

ID.—WARRANTIES BY SELLER AS TO AGE AND SIZE—CONSTRUCTION OF CONTRACT—OBLIGATION OF SELLER TO BUD AND DELIVER TREES.— Under such contract, there was no implied nor express warranty by the seller that the trees should be one year old from the bud and of standard size at all times, or at any particular time, during the year specified for delivery. The seller was under no obligation to bud for the purchaser until one month after the latter gave him notice, and after such budding one year must have elapsed and the trees must have grown to standard size before there could be any obligation resting upon the seller to deliver them.

ID.—NO WARRANTY OF GROWTH OF TREES TO FIXED SIZE WITHIN PARTICULAR TIME.—There is no express warranty in such contract that the trees so budded should grow to standard size in one year, or at any specified date, thereafter, and no warranty to that effect is implied by law.

ID.—EVENT DEPENDENT ON CONDITIONS BEYOND HUMAN CONTROL—WARRANTY NOT IMPLIED.—A warranty of such an uncertain event, which is dependent so much on natural conditions beyond human control, should not be implied unless settled principles of law require it. The rules of the Civil Code relating to warranties to be implied from a sale of merchandise or manufactured articles are inapplicable to such contract.

ID.—REASONABLE TIME IMPLIED FOR BUDDING—DEMAND AND REASONABLE TIME FOR DELIVERY—DELIVERY DURING SUCCESSIVE YEARS.— Where such contract fixes no time for the completion of the process of budding, but only requires it to be begun at the expiration of thirty days from the service of notice of selection, the seller, under section 1657 of the Civil Code, is entitled to a reasonable time within which to do such work; and where no definite time of delivery is fixed, except as it is fixed by an option given the buyer to take the trees " at one year or two year old from the bud," and the provision that delivery should be made during three consecutive years, and as the arrival of the trees at standard size must necessarily be irregular and uncertain, it follows that the seller was entitled to a reasonable time after demand in which to make delivery. If sufficient trees had then grown to standard size, delivery would be due immediately upon a proper demand. If not, and the seller's fault had not caused the failure, both parties would have to await their growth to the size required to bring them within the contract.

ID.—PLEADING—BREACH OF CONTRACT TO DELIVER—ALLEGATIONS OF HAPPENING OF PRECEDENT CONDITIONS TO DELIVERY.—In an action by the purchaser, to recover damages for the failure of the seller to deliver the trees in accordance with such contract, the complaint must either allege generally that the seller had trees of the size and

age specified, subject to the contract, which he could have delivered, or state the particular facts showing a legal obligation upon the seller to comply with the demands for delivery at the time they were made. In the latter form, the complaint should show the date of the giving of notice by the purchaser of the selection of varieties, that the varieties selected were the same as were demanded, and that the trees, at the times of the demands for delivery, had grown to the standard size fixed by the contract.

ID.—BREACHES OF CONTRACT NOT ALLEGED ARE NOT PRESUMED—BREACH OF OBLIGATION TO USE REASONABLE CARE IN CULTIVATION.—In such action, where the only breach of the contract alleged is the failure to deliver the trees, no other breach can be presumed. If the purchaser relied upon a breach of the seller's implied obligation to use reasonable and ordinary care in the cultivation of the trees, whereby they were prevented from growing to standard size at the time of the demands for delivery, such particular neglect and its effect should have been alleged.

ID.—REASONABLE CONSTRUCTION OF CONTRACT—RIGHT TO DEMAND AND DELIVER PORTIONS OF ENTIRE QUANTITY SOLD.—Such contract should receive a reasonable construction and its subject-matter must be considered in its interpretation; and, in view of the fact that all of the trees could not be reasonably expected to become one year old from the bud, or of standard size, on a particular day, but that, ordinarily, they would become so in smaller lots at irregular and uncertain intervals, the contract should be construed so as to allow demands by the buyer, or offers by the seller, of reasonable quantities, less than the whole, at reasonable intervals, subject to the rule that, in the absence of negligence, reasonable time for delivery must be given, as the circumstances required.

ID.—SELECTION OF VARIETIES BY THE PURCHASER.—The provision of such contract that the purchaser should give notice to the seller one month before the budding as to the "variety" which he would select in purchasing the trees, did not limit the purchaser to the selection of but one variety. The purchaser had the right to choose a reasonable number of varieties that could be obtained by the seller with reasonable effort.

ID.—CONCURRENT PAYMENT AND DELIVERY—DEMAND FOR DELIVERY—OFFER TO PAY ON DELIVERY—GOODS NOT PRESENT AT TIME OF OFFER AND DEMAND.—Upon a sale of goods for an agreed price, if the contract contains nothing to the contrary, payment and delivery are concurrent acts. But actual payment need not accompany the demand for delivery, unless such delivery is to be made then and there. If the goods are not present to be then delivered to the buyer, he may render his demand effectual by accompanying it with an offer to pay when actual delivery is made to him.

ID.—NOTICE OF SELECTION OF VARIETIES TO BE BUDDED FOR DELIVERY—REQUIREMENT OF ONE MONTH'S NOTICE BEFORE BUDDING.—Under the clause of such contract providing that notice of the selection of

varieties to be budded for delivery to the purchaser should be given to the seller "one month before the trees are budded," the seller was not required to deliver trees budded during the month following such notice.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Sidney J. Parsons, and Purington & Adair, for Appellant.

Miguel Estudillo, and Geo. A. French, for Respondent.

SHAW, J.—Appeals by defendant from the judgment and from the order denying a new trial.

The plaintiff sued to recover damages alleged to have been sustained by reason of the refusal of the decedent, E. E. Hendrick, to deliver to plaintiff certain orange and lemon trees bought by plaintiff of decedent. The action was begun in Hendrick's lifetime. He died before the trial and the present defendant, as administrator, etc., was substituted as the party defendant in his stead. Judgment was given in favor of plaintiff for $28,453.40.

The agreement of sale was in writing and is made a part of the complaint. It was executed on November 12, 1906, and embraced two contracts of sale. The first was a sale by Pearson to Hendrick of a number of "seed-bed orange plants" on the Charlton Ranch, estimated at one hundred and fifty thousand, at twenty dollars per thousand, to be delivered by the fifteenth day of May, 1907. This contract was fulfilled and is of no importance except as it may explain the meaning of the other contract of sale. The second was a contract of sale from Hendrick to Pearson of "25,000 budded trees of standard size" at prices fixed according to age. Delivery was to be made during the years 1909, 1910, and 1911.

The court below found that Pearson demanded delivery of orange and lemon trees under the contract, and as alleged in the complaint, as follows: Of orange trees, 5,000 on April 30, 1909; 5,406 on May 25, 1909; 5,000 on May 31, 1909, and 6,326 on June 30, 1909; of lemon trees 2,000 on May 31, 1909,

and 500 on June 30, 1909, and that none was ever delivered. The action was begun on July 1, 1909, the day following the last demand. The market price at the time of the demands was $1.50 each for orange trees and $1.25 each for lemon trees. The agreed price being 30 cents each, the court estimated the damage as $1.20 for each orange tree and 95 cents for each lemon tree, making a total of $28,453.40 for the 21,732 orange trees and 2,500 lemon trees demanded. For this sum the judgment was given. The main question for determination is whether or not, under the terms of the contract and the facts of the case, Hendrick was justified in refusing to deliver the trees when demanded.

The contract for the sale of the twenty-five thousand budded trees is peculiar in some respects and we think the court below did not correctly construe it. It is necessary to state its terms at some length. In quoting it we will, for the sake of brevity and for an easier grasp of its meaning, substitute the name "Pearson" for the words "party of the first part," and "Hendrick" for the words "party of the second part." The seed-bed orange plants sold by Pearson to Hendrick were to be delivered by Pearson in boxes by the fifteenth day of May, 1907, and this was done. The material parts of the second contract are as follows:

"It is also agreed that in case of all or a portion of the seed-bed stock sold by (Pearson) to (Hendrick) being killed by frost, (Hendrick) will be relieved from the obligation contained in this contract to furnish trees to (Pearson) in the proportion which the total amount of trees sold to (Hendrick) by (Pearson) bears to the amount of trees killed by frost. . . .

"It is further agreed, in consideration of the premises and of the covenants hereinafter contained, that (Hendrick) will sell to (Pearson) and (Pearson) will buy 25,000 budded trees of standard size, and (Pearson) shall have the option of purchasing said trees at one-year old or two-year old from the bud. If taken at the age of one year from the bud (Pearson) agrees to pay thirty cents per tree; if taken at the age of two years old from the bud, thirty-five cents per tree, and if taken at the age of three years old from the bud forty cents per tree.

"It is stipulated that a standard tree one year old from the bud shall be five-eighths of an inch in diameter two inches above the bud, and that a standard tree two years old from

the bud shall be three-fourths of an inch in diameter two inches above the bud. The delivery of said trees shall be between 1909 and 1911 inclusive.

"It is hereby agreed that (Pearson) shall give notice to (Hendrick) one month before the trees are budded as to the variety which (Pearson) will select in purchasing the trees as per this contract and the option hereinafter set forth."

A paragraph followed stating the option last mentioned which gave Pearson the privilege of purchasing twenty-five thousand additional standard trees upon the same terms. No trees covered by this option are in controversy here and it has no bearing on the case.

The complaint sets forth the contract in full, alleges the several demands for trees one year old from the bud and the several refusals to deliver the same, states the amount of damages caused thereby and demands judgment. It does not aver that at the time of each or any demand, Hendrick had on hand trees of standard size, or trees one year old from the bud, in numbers sufficient to comply with such demands. The evidence shows that at the time of these demands and up to the time the action was begun only about five thousand trees had reached standard size. The complaint alleges, in general terms, that Pearson duly performed all the conditions of the agreement on his part, but it does not otherwise aver that he gave Hendrick any notice one month before the trees were budded, or at all, as to the variety of trees he would buy. There is no allegation that any such notice was given or that any trees were budded in pursuance thereof, or at all.

The findings, in response to the allegations in the answer, state that on March 31, 1908, Pearson notified Hendrick as to the varieties he would select in purchasing under the agreement, to-wit: "twenty per cent Thompson Improved Navels, twenty-five per cent Valencias, forty-five per cent Washington Navels and ten per cent Eureka Lemons."

Where one makes an unqualified agreement to sell goods to be delivered at a fixed time, or on demand of the buyer within a stated period, and it is inherently possible to obtain the goods, the fact that the seller may have expected to manufacture the goods himself, or to procure them from a certain source, and has not been able to complete or obtain them when delivery is due, does not excuse performance. In that event,

his contract being unconditional and unqualified, he must go into the market if necessary and obtain the goods, and he will be liable in damages for non-delivery. (2 Mechem on Sales, sec. 1103.) The complaint herein was evidently drawn upon the theory that the agreement in question was of this character. It sets forth the contract in full, but aside from that it alleges in general terms, that plaintiff fully performed his part of the contract, and avers the several demands above mentioned for trees one year old from the bud, and of standard size, except that of April 30th which did not specify standard size, the refusals, the damages, and nothing more. These facts alone would make the defendant liable in damages only upon the theory that the agreement was a general undertaking by Hendrick to sell and deliver twenty-five thousand trees one year old from the bud and of standard size, to be obtained by him at his peril.

Where the contract is not a general undertaking to sell the goods, which the seller is to have ready at all events when delivery is due, but is a contract to sell a specified article when it grows to a specified size or age, or a certain number to be selected out of a particular larger lot or to be produced from a specified source, or to be prepared in a manner to be afterwards prescribed by the buyer, a different rule prevails. The sale and delivery are then made to depend upon the happening of the precedent conditions. Until they have occurred, there is no obligation upon the seller to deliver, unless their non-occurrence was occasioned by his fault. And if they do not occur, or their occurrence becomes impossible, without his fault, he is excused from performance. Likewise, if the occurrence is delayed without his fault, the time of performance is postponed accordingly. A case in point is *Howell* v. *Coupland*, L. R. 9 Q. B. 462, S. C. on appeal, L. R. 1 Q. B. Div. 258, where one party agreed to sell a crop of potatoes to be grown on a certain tract of land. The crop was so poor, from blight, that he did not raise enough to fill the contract and he was excused thereby from full performance. Other illustrations of the general rule are found in *Appleby* v. *Myers*, L. R. 2 C. P. 657; *Taylor* v. *Caldwell*, 3 Best & S. 833, 32 L. J. Q. B. 164; *Stewart* v. *Stone*, 127 N. Y. 500, [28 N. E. 595, 14 L. R. A. 215]; *Dexter* v. *Norton*, 47 N. Y. 62, [7 Am. Rep. 415]; *McMillan* v. *Fox*, 90 Wis. 173, [62 N. W. 1052]. (See, also, 2 Mechem on Sales, secs. 1100, 1101.)

This contract is of the latter kind. It is an agreement by Hendrick to sell twenty-five thousand trees of standard size to be grown by him from small plants, either those furnished to him by Pearson or others of like kind and size, in a place of his selection. They were to be budded by him to certain varieties to be afterwards selected by Pearson, of which selection Pearson was to give him notice one month before budding was to begin, and they were not to be delivered until the year 1909, nor until they were one year old from the bud and had grown to standard size. It may be added that by the letter of the contract to sell the twenty-five thousand trees, it does not appear what kind of trees were to be budded by Hendrick and sold by him to Pearson, whether orange, lemon, apple, peach, pear, or indeed any kind of fruit trees. It is only by reference to the clause reducing proportionally the number of trees to be sold by Hendrick if the orange plants sold to him by Pearson should be partly killed by frost and practically annulling the sale by Hendrick, if all of the Pearson stock were killed, thus implying that the twenty-five thousand trees were to be grown from the Pearson seed-bed orange plants, and by reference to the provision for a notice of selection of varieties by Pearson and the written notice of selection, subsequently made by him, coupled with an assumption of judicial knowledge of the significance of the names of the varieties stated in the notice, which we are not sure we can claim, that we can infer, as both parties seem to have understood, that the twenty-five thousand trees were to be citrus trees budded upon orange stock, and presumably upon the seed-bed stock furnished by Pearson, since no other seems to have been contemplated.

Under these conditions there was no implied warranty by Hendrick that the trees should be one year old from the bud and of standard size at all times, or at any particular time, during the year 1909. There is clearly no express warranty to that effect. He was under no obligation to bud for Pearson until one month after Pearson gave him notice, and after such budding one year must have elapsed and the trees must have grown to standard size before there could be any obligation resting upon Hendrick to deliver them.

There is no express warranty that the trees so budded should grow to standard size in one year thereafter, or at any specific

date thereafter. And the law does not imply such warranty from the conditions of the contract or the facts alleged. The time required for the natural growth of a tree to a given size depends very much on natural conditions beyond human control. Temperature, soil, rainfall, force and constancy of winds, cultivation, and fertilization, all affect it. A warranty of such uncertain events should not be implied unless settled principles of law require it. It is not like the manufacture of an article, the completion of which one is presumed to warrant, if he agrees to sell and deliver it at a given time. The rules of the Civil Code relating to warranties to be implied from a sale of merchandise or manufactured articles do not apply. The only language that could be suggested as constituting such warranty is the provision that "a standard tree one year old from the bud shall be five eighths of an inch in diameter, two inches above the bud." This is a mere description of the thing meant by the term "standard size" and it was obviously inserted solely to prevent dispute or the necessity of proof on the subject. It does not declare that when the trees are one year old from the bud they shall be of that size, or anything to that effect, as would be necessary to constitute such warranty, but, in effect, that upon or after reaching that age, they must be of the size stated before they can be considered of "standard" size.

The contract fixes no time for the completion of the process of budding the twenty-five thousand trees in question. It required it to be begun at the expiration of thirty days from service of notice of selection; but no time of completion is stated. "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." (Civ. Code, sec. 1657.) It cannot reasonably be contended that it required the task of budding to be done in one day. Referring for the moment to the evidence in the particular case, it appears that only a little over one fourth of these one hundred and fifty thousand trees were large enough to bud until after July 1, 1908. The suit was begun July 1, 1909. The evidence further shows by the uncontradicted testimony of experienced nursery-men that but a small percentage of budded citrus trees will grow to standard size in one year after budding, even with proper care and treatment. No definite time of delivery is fixed, except as it is fixed by the option

CLX Cal.—42

to Pearson to take them "at one year old or two year old from the bud," and the provision that delivery should be during the years 1909, 1910, and 1911. The option clause obviously does not mean at the precise age stated, but at some reasonable time during the second or third year after budding. As the time allowed for budding is a reasonable time and it could not well be done all at once, and as the arrival at standard size must necessarily be irregular and uncertain, it follows that Hendrick was entitled to a reasonable time after demand in which to make delivery. If sufficient trees had then grown to standard size, delivery would be due immediately upon a proper demand. If not, and his fault had not caused the failure, both parties would have to await their growth to the size required to bring them within the contract.

From all these considerations it follows that the complaint fails to state a cause of action. It should have alleged generally that Hendrick had trees of the size and age specified, subject to the contract, which he could have delivered. In the absence of this, and perhaps this would have been a better form of pleading, it should have stated the particular facts showing a legal obligation upon Hendrick to comply with the demands at the times they were made. In the latter form it should have shown the date of the giving of notice by Pearson of the selection of varieties, and that the varieties selected were the same as were demanded. In view of the fact that a reasonable time was allowed to complete the budding and the uncertainty that the trees budded in May and June, 1908, would attain standard size in May or June, 1909, when the demands were made, in sufficient numbers to meet those demands, such growth would scarcely be presumed, and it should have been alleged. This defect in the complaint requires a reversal of the judgment.

We have considered the rights of the parties under the contract, as we conceive them to be upon the hypothesis that Hendrick had performed all the duties thereby imposed upon him except the failure to deliver the trees. No other breach is alleged and none other can be presumed. Upon the trial an attempt was made by the plaintiff to show that Hendrick had carelessly selected an unsuitable place in which to transplant, bud, and grow the trees to standard size. and that he

had not properly watered or cultivated them and that this neglect was the cause of their failure to grow to and be of standard size at the times of the demands. The contract implies an undertaking by Hendrick to use reasonable and ordinary care in these respects. It is only necessary to say upon this point, that if the plaintiff relied upon a breach of this obligation, the particular neglect and its effect should have been alleged. The findings are defective upon the point and do not cure the defect in the complaint.

It is contended by the defendant that the contract was an entire one for the sale of twenty-five thousand trees in one lot and that Pearson had no lawful right to make successive demands for performance or require delivery by piecemeal. The contract must receive a reasonable construction and its subject-matter must be considered in its interpretation. We have seen that all of the trees could not be reasonably expected to become one year old from the bud, or of standard size, on a particular day, but that, ordinarily, they would become so in smaller lots at irregular and uncertain intervals. No objection seems to have been made at the time by Hendrick to successive demands of parts only, of the entire lot. We think a reasonable construction of the agreement, and one most favorable to both parties, would allow demands by the buyer, or offers by the seller, of reasonable quantities, less than the whole, at reasonable intervals, subject to the rule before stated that, in the absence of negligence, reasonable time for delivery must be given, as the circumstances required.

In view of the possibility of another trial upon amended pleadings, it is necessary to notice some other points presented by the record. Pearson, in the notice as to the variety he would select in buying, included four different varieties. It is claimed that the contract limited him to one. We think in this case the singular should be held to include the plural, and that it gave Pearson the right to choose a reasonable number of varieties that could be obtained by Hendrick with reasonable effort.

It is contended that Pearson's demands were insufficient and ineffectual, because no money was tendered in payment concurrently with the demand for delivery. It is true that upon a sale of goods for an agreed price, if the contract contains nothing to the contrary, payment and delivery are concurrent

acts. (*Cole* v. *Swanston,* 1 Cal. 51, [52 Am. Dec. 288].) But actual payment need not accompany the demand for delivery, unless such delivery is to be made then and there. If the goods are not present to be then delivered to the buyer, the buyer may accompany his demand with an offer to pay when actual delivery is made to him. This the plaintiff did. His demand was made at the office of defendant in Riverside and it was accompanied by the statement that he was ready to pay for the trees upon delivery. He was met with a refusal and a statement that there were no trees on hand of standard size that were subject to the contract. The trees were then at the nursery seventeen miles distant. Pearson thereupon went to the nursery to get the trees, prepared to pay for them on delivery, but he was again refused delivery, for the same reason as before. Under these circumstances he was not required to actually produce the money, either at the office or at the nursery, in order to make his demand effectual. (Civ. Code, secs. 1440, 1511, subd. 1, 1515; *Scribner* v. *Schenkel,* 128 Cal. 253, [60 Pac. 860; *Pierce* v. *Lukens,* 144 Cal. 401, [77 Pac. 996].)

The notice by Pearson as to the varieties he would select in buying, was given on March 31, 1908. About twenty-three thousand trees were budded by Hendrick in the month of April, 1908, to some of the varieties selected by Pearson and about twenty-two thousand more were budded in May and June, 1908. These comprised all of the trees of the Pearson stock that were large enough for budding at that time. The plaintiff insists that five thousand of the trees budded in April had reached standard size in May, 1909, and that they constituted a part of the trees which Hendrick agreed to sell by the contract, and that plaintiff was therefore entitled to delivery thereof upon the demand of May 31, 1909, or upon one of the previous demands. Hendrick refused to deliver them, claiming that they were not subject to the agreement of sale. The contract declares that Pearson's notice of the selection of varities to be budded for delivery to him should be given to Hendrick "one month before the trees are budded." Consequently, budding in pursuance of the notice and for delivery to Pearson, need not have been commenced during the month following the service of the notice. This time was evidently allowed for the benefit of Hendrick, to

enable him to procure buds of the varieties chosen and prepare for the work of budding. It would seem reasonable to conclude that Hendrick was not required to deliver trees of the April budding to Pearson. There were at least one hundred and fifty thousand trees to be budded. Hendrick had the right to begin budding them as soon as they were large enough. Pearson must be assumed to have knowledge of their age and size. If he wished to obtain trees upon his contract that were budded in April, 1908, he should have given an earlier notice of his selection. In the absence of neglect by Hendrick retarding the growth to budding size, and bad faith in immediately budding the trees in April in order to avoid having trees to fill Pearson's orders in 1909, he would not be bound to deliver trees of the April budding to Pearson. No such neglect or bad faith is alleged.

The judgment and order are reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.