[Civ. No. 9675.   Third Dist.   Nov. 13, 1959.]

JESSE R. McNAMES, INC., Respondent, v. HENRY C. BERGMANN, INC., Appellant.

Mark M. Brawman for Appellant.

Burton & Hennessy for Respondent.

WARNE, J. pro tem.*—This is an appeal from a money judgment in an action for breach of contract.

On July 11, 1956, the parties in this action entered into a written agreement whereby appellant agreed to sell and respondent agreed to buy a certain 1,250-gallon used milk tank which appellant expected to get as a trade-in from a customer at Tempe, Arizona. The tank was to be delivered to respondent f.o.b. at appellant's plant in South Gate, California, and respondent was to pay appellant the sum of $2,480 which included $1,800 for the tank; $350 for installing it on respondent's truck; federal excise tax and California sales tax. Of the total amount $608 was paid at the time of the execution of the contract, the balance to become due and payable on delivery.

The purchase order, which became the contract, provided: "This order when accepted by yourselves and countersigned

*Assigned by Chairman of Judicial Council.

by an authorized representative of our firm will constitute a contract of purchase and sale between us.''

Appellant contends that the sale of the tank was conditional upon its being procured from the customer in Arizona. There is substantial evidence to the contrary.

True, respondent testified upon cross-examination that he understood that the tank was a used one; that it was said to be some place in Arizona; that he understood that the tank was going to be received by appellant as a trade-in on a new tank; and that he was dealing for that particular tank; but when asked if in the event the tank was not delivered to appellant it was his understanding that the deal was off, he replied, ''I didn't think there was going to be any question about it being delivered. They was [sic] making a tank to take down there, a larger tank, to replace the smaller tank. When he took my downpayment of $608.00 why, I figured that he surely was going to get the tank.'' This is borne out by the fact that immediately after the contract was signed respondent purchased a truck and had it lengthened for the specific purpose of mounting the tank thereon. Surely there was nothing in this testimony to indicate that the parties to the contract mutually understood that it was not a binding contract unless the seller was able to get the specific tank in question. Further there was evidence from which it appears that the appellant likewise so understood the contract. Such is apparent from a reading of its letter of August 30, 1956, addressed to respondent wherein it is stated:

''We are completing a tanker for our customer in Arizona in the near future, after which the 1,250 gallon tanker will be delivered to South Gate, should you be willing to comply with our original order let me hear from you.

''We will expect you to live up to your original order also expect Certified check to cover C.O.D. balance.

Very truly yours,<br>
Henry C. Bergmann, Inc.

/s/ O. C. Schlenker<br>
By Oscar Schlinker''

The trial court found that the contract of purchase and sale in question was not conditional upon appellant's obtaining the tank, and the evidence amply supports such finding and the conclusion that respondent was entitled to recover his

damages by reason of appellant's having breached the contract.

As stated in *Pearson* v. *McKinney*, 160 Cal. 649, 654-655 [117 P. 919] : "Where one makes an unqualified agreement to sell goods to be delivered at a fixed time, or on demand of the buyer within a stated period, and it is inherently possible to obtain the goods, the fact that the seller may have expected to manufacture the goods himself, or to procure them from a certain source, and has not been able to complete or obtain them when delivery is due, does not excuse performance. In that event, his contract being unconditional and unqualified, he must go into the market if necessary and obtain the goods, and he will be liable in damages for non-delivery."

Unquestionably the date of delivery in the instant case was to be immediately following the date of trade-in on a new tank which appellant was manufacturing for its customer in Arizona. It appears that the new tank was delivered to the Arizona customer, but the trade-in tank was not delivered to appellant, its customer having breached their agreement by selling it to someone else.

Appellant next contends that the finding as to the damages is not supported by the evidence. The trial court found: "That the plaintiff was damaged to the extent of $608.00 as a result of the failure of the defendant to return his downpayment; . . . to the extent of $325.00 for lengthening his truck; . . . to the extent of $275.47 to shorten his truck, when the tank was not delivered by the defendant; . . . to the amount of $45.00 for strengthening springs on truck in preparation for the tank in the contract described; . . . in the amount of $932.40 when the defendant failed to deliver the tank as agreed; . . . in the amount of $55.00 to make trips to find a replacement . . . to the extent of $700.00 as a result of purchasing a replacement tank. That the plaintiff was damaged in the total amount of $2,940.87."

The evidence shows that the contract price of the tank was $1,800. It was a used tank and a similar one could not be obtained in the open market. A new tank, substantially the same as the one agreed to be sold, if it could have been obtained, would have cost approximately $2,600. Ordinarily under the provisions of section 1787, subdivision (3), of the Civil Code, this difference in price would be the respondent's measure of damages for the breach of the contract, but here the evidence shows that respondent suffered additional damage

as the result of appellant's failure to deliver the tank as agreed. Hence the proper measure of damages applicable here is not as provided in subdivision (3) of the cited section, but rather as provided in subdivision (2) thereof which is as follows: "The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract." Subdivision (3) of the section was not applicable because there was no used 1,250-gallon stainless steel transport tank for sale on the open market.

In reliance on appellant's promise to deliver the tank in question, respondent spent, according to the evidence, $325 to lengthen his truck in order that the 1,250-gallon tank might be mounted thereon; he spent $45 to strengthen the springs to receive the heavy tank, but this is not all the damage that the plaintiff suffered by reason of not having the tank in question delivered to him. He was engaged in the business of transporting milk and being unable to get a 1,250-gallon tank in the open market, he had to purchase a 1,000-gallon tank in lieu thereof. In looking for a replacement tank he spent the sum of $55. It cost him $275.47 to have his truck shortened in order to carry the 1,000-gallon tank, and it cost an additional $190 to have the tank mounted on the truck. His down payment was $608. However it appears that the down payment was refunded after judgment was entered. Respondent was in the milk transport business, and because of the smaller capacity of the 1,000-gallon tank, he was required to make extra round trips to deliver milk. Each round trip was 125 miles at a cost of 16 cents per mile, and in addition thereto the truck driver was paid $14 per trip. These were all items of loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract and were therefore proper items of damage. The evidence substantially supports the court's finding and the judgment.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied December 3, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 30, 1959.