## STEWART *v.* KNIGHT & JILLSON COMPANY.

[No. 20,667.   Filed February 2, 1906.   Rehearing denied May 18, 1906.]

1. PLEADING. — *Complaint. — Demurrer. — When Amendment Avoids Ruling on.*—An amendment to the complaint, during trial, where a demurrer thereto has been overruled, does not avoid such ruling where such complaint was not refiled and where the amendment was treated as made before such demurrer was overruled.   p. 500.

2. SAME.—*Complaint.—Bill of Particulars.—Caption of.—Surplusage.*—A complaint upon a contract of direct guaranty covering an itemized account, the caption of which account was: "Sold to Larkin & Co.," is not bad, the guaranty being for goods to be sold to "Corvin Larkin," where the complaint alleged that such goods were sold to "Corvin Larkin," such caption being surplusage.   p. 501.

3. SAME. — *Complaint. — Contracts.—When Exhibit Controls.*— Where, in a complaint founded upon a written contract, the allegations of the complaint vary from the written instrument set out as an exhibit, the exhibit controls.   p. 502.

4. GUARANTY.—*Contracts.—Notice of Acceptance.*—A written proposal by defendant in form: "Please let the bearer * * * have whatever he wants at any time, and I will see that the same is paid for," constitutes, when accepted, a contract of direct guaranty and requires neither notice of acceptance nor of the principal's default.   p. 502.

5. SAME.—*Pleading.—Failure to Give Notice of Default.—Answer.*—The failure to notify defendant indirect guarantor of his principal's default constitutes a defense.   p. 504.

6. PARTIES.—*Guaranty.*—In an action on a contract of direct guaranty it is not necessary to make the principal a party defendant.   p. 504.

7. GUARANTY. — *Contracts. — Abandonment of. — Subsequent Credits.*—Where the creditor returns the contract of guaranty to the guarantor to be renewed, stating it was "no good anyhow," and gave no directions for its return in case it was not renewed, such guaranty ceases, and credit subsequently extended by the creditor cannot be charged against such guarantor.   p. 505.

8. PRINCIPAL AND SURETY.—*Contracts.*—*Revival of Liability.*— Sureties are favorites of the law; and their liability must be found within the terms of their consent; and liability once terminated cannot be revived by any subsequent arrangement between the principal and creditor without the consent of the surety. p. 509.

From Superior Court of Marion County (62,957); *John L. McMaster,* Judge.

Action by the Knight & Jillson Company against Moses J. Stewart. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337o Burns 1901, Acts 1901, p. 565, §15. *Reversed.*

*Robert W. McBride, Caleb S. Denny* and *George L. Denny,* for appellant.

*John G. Williams* and *D. P. Williams,* for appellee.

JORDAN, J.—Appellee sued appellant to recover $1,259.68 for goods and merchandise sold and delivered by it to Corvin Larkin. The complaint discloses that appellee is a corporation doing business in the city of Indianapolis, Indiana, engaged in the wholesale of plumbers' supplies. The action is based upon the following letter, or instrument, alleged to have been executed by appellant and directed to appellee under the name and style of "Knight & Jillson":

"Indianapolis, Indiana, June 23, 1900.
Knight & Jillson:
Please let the bearer, Corvin Larkin, have whatever he wants at any time, and I will see that the same is paid for. M. J. Stewart."

The complaint alleges that this letter was by appellant delivered to said Corvin Larkin and by him delivered to appellee company, and that the latter, relying solely upon the promise of appellant, as therein made, furnished and delivered to said Corvin Larkin on and after June 23, 1900, until August 31, 1901, various amounts of goods, wares and merchandise. It is alleged that beginning with

May 1, 1901, and at various times after said date until August 31, 1901, appellee, relying solely on the promise of appellant as made in said letter, furnished and delivered to said Corvin Larkin a large quantity of goods and merchandise, consisting of plumbers' supplies, etc., amounting in the aggregate to $1,352.84, of which, after deducting therefrom the credits, there remains due and unpaid $1,259.68, for which judgment is demanded against appellant; that a demand was made upon the latter for the amount so due before the commencement of this action. A bill of particulars showing the goods sold to Larkin between May 1 and August 31, 1901, with credits for payments made on said account, is also filed as an exhibit with the complaint. A demurrer to the complaint for insufficiency of facts and defect of parties defendant was overruled, and appellant answered in eight paragraphs.

The case was tried on the complaint and the answer of appellant, which finally consisted of a general denial, plea of payment, and plea of *non est factum,* and appellee's reply thereto. Upon the issues joined there was a trial by jury and a verdict returned in favor of appellee for $1,312.76. Appellant moved for a new trial, assigning in his motion the statutory grounds and other reasons therefor. He also moved in arrest of judgment. Both of these motions were denied, and judgment was rendered on the verdict. From this judgment he appeals and the alleged errors upon which he relies for reversal are: (1) Overruling the demurrer to the complaint; (2) sustaining appellee's demurrer to the third, fourth, fifth, seventh and eight paragraphs of the answer; (3) overruling appellant's motion for new trial; (4) overruling the motion in arrest of judgment.

Appellant first insists that the court erred in overruling the demurrer to the complaint. At this point, however, we are met with the contention of opposing counsel that

1.  no question is presented on this ruling for the reason that it appears by a bill of exceptions that

appellee during the trial was, over the objections of appellant, permitted by the court to amend the complaint by inserting therein, immediately after the words "whereby he promised to pay to plaintiff herein," the following words: "Under the name and style of Knight & Jillson," and by inserting the same words immediately after the allegation "that said written instrument was addressed to the plaintiff." Appellee claims that by the amendment in question the original complaint to which a demurrer was directed has been superseded, and is therefore not properly in the record. But it does not appear that after the complaint was amended it was refiled, or that any offer to refile it was made, or that appellee demanded that it should again be filed. Apparently the court and both of the parties treated and considered the complaint as if it had been amended at the time the demurrer was overruled thereto. We are confirmed in this view of the matter by the fact that what purports to be the original complaint and the one upon which the cause was tried, as transcribed and certified up as a part of the record, contains at the proper places the words shown by the bill of exceptions to have been added thereto by the amendment in controversy. Under the circumstances the rule that an amended pleading when refiled supersedes the original is not applicable, and cannot be here invoked by appellee.

The caption of the bill of particulars, as exhibited, with the complaint, is as follows: "Sold to Larkin & Co." After this caption there appears an itemized account or statement of goods and wares, giving dates, etc., extending from May 1, 1901, to August 31, 1901. Appellant insists that inasmuch as the complaint in this case shows that plaintiff is Knight & Jillson Co., a corporation suing appellant upon the written instrument in question executed by him, guaranteeing payment for the goods thereafter sold by "Knight & Jillson" to Corvin Larkin, that the pleading is insufficient and bad on de-

murrer, because the caption of the bill of particulars states that the goods were sold to Larkin & Co. instead of being sold to Corvin Larkin, the person named in said instrument. This contention is untenable. The caption of a bill of particulars is not an essential part thereof, and may be rejected as surplusage, and any statement therein cannot be held to control or vary the averments of the complaint with which it is filed as an exhibit. It will be observed that it is specifically alleged in the complaint that the goods and merchandise in suit were sold by the plaintiff to Corvin Larkin, and while the particular items in respect to the goods sold, as stated or specified in the bill of particulars, as a general rule govern the allegations of the complaint in regard to these items, nevertheless neither the caption of the bill nor the body thereof will be allowed to overthrow or control the specific averments of the complaint in respect to the parties or persons therein stated. *Vannoy* v. *Klein* (1890), 122 Ind. 416; *Furry* v. *O'Connor* (1891), 1 Ind. App. 573; *Wellington* v. *Howard* (1892), 5 Ind. App. 539; *Chapman* v. *Elgin, etc., R. Co.* (1895), 11 Ind. App. 632.

It is true that in an action founded on a written contract, where the latter, or a copy thereof, is filed with and made a part of the complaint, the contents or stipulations of the written contract control any averments of the complaint in conflict therewith. *Cotton* v. *State, ex rel.* (1878), 64 Ind. 573; *Indiana, etc., Assn.* v. *Plank* (1899), 152 Ind. 197, and authorities cited.

It is next insisted that the letter or document upon which this action is based is but a collateral undertaking on the part of appellant, and therefore, in order to render him liable thereon, he was entitled to notice of its acceptance by appellee company and also notice of the default of Larkin, and that the failure of the complaint to allege or show these facts renders it fatally defective. The letter in question, however, does not profess to be an

offer or a proposition to guarantee the payments of goods that might be sold by appellee to Corvin Larkin, but it is a positive and unqualified order by appellant to appellee to let the bearer, Corvin Larkin, have at any time what he might want, coupled with a direct, unconditional, absolute, original promise or undertaking by appellant to pay for the goods or supplies that appellee might sell to Larkin. Consequently, when appellee accepted the letter or document in question and acted thereon by selling the goods and merchandise in controversy to Larkin, the promise became binding upon appellant, and he was liable thereon without any notice of the fact that appellee had accepted appellant's guaranty or promise to pay for the goods sold and furnished to Larkin. Neither was he entitled to notice that the latter had defaulted in the payment for the goods so sold and furnished to him. When the writing in question was delivered to and accepted by appellee company, appellant then stood in the attitude of a surety for Larkin, and was required to take notice of the default of his said principal. The interpretation which we accord to the letter or written document in dispute, and the rule which we affirm and adhere to, are well sustained and settled by the decisions of this court and by the decisions of the higher courts in other jurisdictions. *Wright* v. *Griffith* (1890), 121 Ind. 478, 6 L. R. A. 639; *Nading* v. *McGregor* (1890), 121 Ind. 465, 6 L. R. A. 686; *Jackson* v. *Yandes* (1845), 7 Blackf. 526; *Bechtold* v. *Lyon* (1892), 130 Ind. 194; *Metzger* v. *Hubbard* (1899), 153 Ind. 189; *Kibby* v. *Studebaker* (1860), 15 Ind. 45; *Ward* v. *Wilson* (1885), 100 Ind. 52, 50 Am. Rep. 763; *Lane* v. *Mayer* (1896), 15 Ind. App. 382; *Bryant* v. *Stout* (1896), 16 Ind. App. 380; *Wheeler* v. *Rohrer* (1899), 21 Ind. App. 477; *Newcomb Bros., etc., Co.* v. *Emerson* (1897), 17 Ind. App. 482; *Hotchkiss* v. *Barnes* (1867), 34 Conn. 27, 91 Am. Dec. 713; *Smith* v. *Dann* (1844), 6 Hill (N. Y.) 543; *Douglass* v. *Howland* (1840), 24 Wend. 35, and authori-

ties there cited; *Sickle* v. *Marsh* (1872), 44 How. Pr. 91; *Union Bank* v. *Coster* (1850), 3 N. Y. 203, 53 Am. Dec. 280; *City Nat. Bank* v. *Phelps* (1881), 86 N. Y. 484; *Paige* v. *Parker* (1857), 74 Mass. 211; *Yancey* v. *Brown* (1855), 3 Sneed (Tenn.) *89; *Wilcox* v. *Draper* (1881), 12 Neb. 138, 10 N. W. 579, 41 Am. Rep. 763; *Scott* v. *Myatt & Moore* (1854), 24 Ala. 489; *Carman* v. *Elledge* (1875), 40 Iowa 409.; *Case* v. *Howard* (1875), 41 Iowa 479; *London & San Francisco Bank* v. *Parrott* (1899), 125 Cal. 472, 58 Pac. 164, 73 Am. St. 64; *Scribner & Co.* v. *Schenkel* (1900), 128 Cal. 250, 60 Pac. 860; *Caton* v. *Shaw* (1827), 2 Har. & Gill (Md.) 13; *Boyd* v. *Snyder* (1878), 49 Md. 325; *Powers* v. *Bumcratz* (1861), 12 Ohio St. 273; 14 Am. and Eng. Ency. Law (2d ed.), 1141, 1145.

It may be said, however, that in cases· of guaranty or collateral undertaking in which notice to the guarantor of the default of his principal is requisite it is not essential to the statement of a right of action that the complaint allege or show that such notice was given, for the reason that the failure to notify the guarantor of the default of his principal constitutes a matter of defense. *Furst & Bradley Mfg. Co.* v. *Black* (1887), 111 Ind. 308; *Stanley* v. *Stanley* (1887), 112 Ind. 143; *Snyder·* v. *Click* (1887), 112 Ind. 293; *Ward* v. *Wilson* (1885), 100 Ind. 52, 50 Am. Rep. 763; *Davis* v. *Wells* (1881), 104 U. S. 159, 26 L. Ed. 686.

We hold that the complaint sufficiently states a cause of action, and that the demurrer thereto on the ground of insufficiency of facts was properly overruled. Neither was the demurrer well taken upon the ground that there was a defect of parties defendant. Corvin Larkin was not a necessary party defendant to· this action.

Appellant's counsel argue a number of questions arising upon the rulings on the pleadings and others based upon

the overruling of the motion for a new trial. In view, however, of the conclusion which we have reached, all but one of these questions may be properly dismissed without consideration. Counsel earnestly contend that under the evidence upon the issues joined between the parties appellee was not entitled to a verdict or judgment in its favor upon the written instrument herein involved. The evidence establishes that appellee is an incorporated company, engaged in the sale of plumbers' supplies in the city of Indianapolis, Indiana. Jillson is the president of the company and Kimberlin is the secretary and general credit man of the company and the person who looks after the collections and credits of the concern. Corvin Larkin is the brother-in-law of appellant Stewart, and was engaged in the business of a plumber in the city of Indianapolis for a period of time running from March, 1900, to October, 1901. He purchased goods and supplies for his trade from appellee company between March, 1900, and June 23, 1900. During that time he paid cash for all goods sold to him. About June 23, 1900, Larkin secured a job which required material to the amount of $250 or $300, and it became necessary for him to procure credit for that amount. He accordingly called upon Kimberlin, appellee's secretary, in order to ascertain about his obtaining credit for the purchase of the material which he needed in the completion of the job in question. Larkin advised Kimberlin that appellant, Stewart, would be responsible, or stand good, for the sales made to him, and Kimberlin thereupon directed him to obtain a letter from appellant to that effect. After having this understanding with Kimberlin, Larkin went to the store of appellant in the city of Indianapolis and stated to him that he had a job of work, but could not purchase the material necessary therefor without security, and asked him if he would stand good for the purchase of material for the job, which Larkin at the time stated would be between $250

and $300. Appellant informed him that he would stand good for that amount, and inquired where he intended purchasing the supplies and material, and Larkin replied: "Down at Knight & Jillson's." Thereupon appellant directed his stenographer, or clerk, to make out a paper to Knight & Jillson asking them to let Corvin Larkin have what he wanted to an amount of $250 or $300. Nothing was said about giving him unlimited credit.

After giving these directions to his stenographer appellant was called out of the store, and in his absence the stenographer prepared the letter, or document, set up in the complaint in this action, signed appellant's name thereto, and gave it to Larkin to deliver to appellee. Larkin carried the letter to Kimberlin, appellee's secretary, who read it, and then informed Larkin that he had examined in regard to appellant's rating and that he would be satisfactory as security. Appellant did not see the letter after it was written by his stenographer. On the trial Kimberlin testified that after Larkin had delivered the letter he (Kimberlin) called appellant up over the telephone and read the document to him and asked him if it was all right, and appellant answered that it was. Appellant on the trial, however, denied that Kimberlin called him up and read the letter to him over the telephone.

Prior to the incorporation of the appellee company it did business as a firm under the name of "Knight & Jillson." The evidence discloses that appellee first opened an account with Larkin on May 4, 1900, and the goods sold to him between that date and June 23 following, the date of the letter in suit, was $263.92. From June 23, 1900, to August 31, 1901, the amount of merchandise sold by appellee to Larkin was $4,626.03. In May, 1901, Larkin had paid all the bills and accounts which he owed appellee at that time. The merchandise involved in this action was sold by appellee to Larkin between some date in May,

1901, and August 31 of the same year, the account being closed at the latter date.

The undisputed evidence in this case shows that about November 10, 1900, Kimberlin called Larkin into the office of the company and returned to him the letter or instrument set up in the complaint and the one upon which this suit is based. The evidence given by Larkin relative to this transaction is as follows: "I will ask you whether Mr. Kimberlin gave you this letter along about November 10, 1900, and told you to have Mr. Stewart put some limit as to amount in it? A. He told me that Mr. Jillson said the letter was no good as it was, and for me to have Mr. Stewart put a limit to it, but I did not. I gave it back to him the way it was. How long did you keep this letter before giving it back to Mr. Kimberlin? A. I do not remember. Why did you not give it to Mr. Stewart and have a limit as to the amount put in it? A. Because I had bought so much goods there, and paid them the money, that I did not think I needed security, and because they said it was no good anyhow. Did you state to Mr. Kimberlin the reason given in your last preceding answer why you returned this letter to him? A. I do not remember. Did Mr. Kimberlin ask you to return it to him before you did so return it? A. I am not sure, but I think he did."

The evidence given by Kimberlin, the secretary of appellee company, who testified on the trial in behalf of his company in regard to the same transaction, is as follows: "Was there any conversation, I will put it, between you [Kimberlin] and Mr. Larkin about that letter on or about, or in or about, the month of November, 1900? A. There was. Were you the person yourself who did the talking with Mr. Larkin on that occasion? A. I was. And did you have this letter of credit, as he calls it, in your hands at that time? A. I did. And did you give it to Mr. Larkin at that time? A. I did. How long did he keep it? A. Four or five days; perhaps a week. Did he return it

to you individually? A. He did. And did he, so far as you know or learned from him, ever show it to Mr. Stewart during the four or five days that he had possession of it? A. I could not say. Did he comply, or did he not say to you that he had not complied with your request to carry it to Mr. Stewart for the purpose of getting Mr. Stewart to make some change in it, or do something? A. He did. He said he had not? A. Yes, sir. And, so far as you know, Mr. Stewart never saw the letter during those four or five days? A. No, sir. So far as you know, Mr. Stewart never did see that letter from the time it was written until about September 9, 1901, did he? A. That is correct." There is no other testimony in the case relative to this transaction.

The evidence relative to the transaction in question is undisputed, and thereon, under the issues in the case, an important legal question is presented for our determination. Appellant's counsel urge that when appellee company in November, 1900, declined to extend further credit to Larkin on the faith of this letter or instrument in question, and thereupon delivered it over through its authorized agent, Kimberlin, to Larkin, appellant's principal, with the accompanying direction to him to return it to appellant and have the latter make changes therein, the letter thereafter ceased to have any further vitality, and future sales of goods to Larkin would not bind appellant. It will be observed that, so far as the evidence discloses, there was no condition, qualification or reservation whatever imposed by Kimberlin, when he delivered up the letter to Larkin, that, in the event appellant declined to alter or amend the letter, Larkin should return it or deliver it back to appellee. No provision or stipulation was made for its redelivery to appellee, or its agent Kimberlin, and the subsequent delivery of the letter by Larkin to Kimberlin appears to have been entirely on Larkin's own voluntary motion. The declaration or accompanying statement of

Kimberlin when he delivered the letter to Larkin was that Jillson, who as the evidence discloses was the president of the company and exercised a general control over its affairs, said that it was "no good," and that he must take it to appellant and have him change it by prescribing or fixing a limit therein as to the amount of goods for which he would be liable. The fact that Larkin was requested to take it to appellant and have the latter place some limit thereon was but the equivalent of a request or direction by Kimberlin to him to procure a new undertaking, and indicates or shows an intention on the part of appellee no longer to rely upon the letter. The declaration or statement on the part of Kimberlin, that the letter was "no good," and that it was of no effect, was in plain language, and further exposed the intention of appellee no longer to rely thereon as security for giving credit to Larkin. The excuse which the latter gave in his evidence for not taking the document to appellant and procuring another undertaking was that he had purchased so many goods of appellee for which he had paid, and therefore he did not think he needed any security, and because "they" (appellee) said "it" (the letter) "was no good anyhow." As we have hereinbefore held, appellant, under the letter or document in controversy, was the surety of Larkin, and the relation of principal and surety existed between them, of which relation, as is shown, appellee had actual notice or knowledge at the time of the original delivery of the letter to it. It is an elementary principle that sureties are favorites

8.  of the law, and their liability must be found within the terms of their consent. When the liability of the surety is once discharged or terminated it cannot be revived by any subsequent arrangement between the principal and creditor without the consent of the surety. 27 Am. and Eng. Ency. Law (2d ed.), 507. As the facts show, Larkin did not take the letter to appellant and procure a change therein, of which fact appellee

was apprised, but after holding it for a week or more, without the knowledge or consent of appellant, he turned over the possession thereof to Kimberlin. If Larkin, under the circumstances, could hold the letter or undertaking for a week, and then by merely turning the possession of it over to Kimberlin thereby revive or revitalize it so as to make it binding upon appellant for future sales, then, under the circumstances, he might have held or retained it for six months or a year, or longer, without the knowledge or consent of appellant, and in like manner revive it and again utilize it as he did originally. That the rights of appellant as a surety under the law could not be disregarded in this manner by appellee and Larkin requires no extended argument. That appellee by the transaction in surrendering the letter or undertaking to Larkin at the time as shown, with the intention to obtain from appellant what was as we have said the equivalent of a new undertaking, thereby absolutely abandoned the undertaking in controversy, and thereafter was no longer justified in relying thereon and giving credit to Larkin, is certainly evident. By the complete surrender of the undertaking with such intention it became *functus officio. Sherman* v. *Sherman* (1852), 3 Ind. 337. The mere repossession of it thereafter by appellee from Larkin without the consent of appellant surely would not suffice to revive it or revitalize it, and thereby authorize appellee in the future to rely thereon in extending credit to Larkin. Being dead in effect, it afforded appellee no basis or right to give credit to Larkin for the goods and merchandise involved in this action.

It follows from the conclusion which we have reached, that the evidence does not sustain the verdict of the jury, and the judgment is therefore reversed, and the cause remanded.