INDIANAPOLIS MORRIS PLAN CORPORATION *v.* SPARKS.

[No. 19,237. Filed March 22, 1961. Rehearing denied April 26, 1961. Transfer denied June 27, 1961.]

146

*Nathan Nisenbaum,* of Indianapolis, for appellant.

*Dale & Dale, Francis C. Dale, Jr.,* and *Mary Miller Dale,* of Indianapolis, for appellee.

Ax, C. J.—The issues in this case were made by the filing of a complaint on a note in one paragraph by the appellant, Indianapolis Morris Plan Corporation, against the appellee, Ruby Lois Sparks, and her former husband, Roy Sparks, wherein the appellant sought to recover the deficiency balance on a note secured by a chattel mortgage. The appellee filed an answer in the nature of *non est factum,* a Second Paragraph of Answer in Denial, and a Third Paragraph of Answer charging failure of consideration and fraud. The appellant filed a Reply in Denial to the appellee's Third Paragraph of Answer putting the case at issue and the cause was tried by the court.

The finding of the court was in favor of the appellee that the appellant was not entitled to recover from the appellee in this action and that costs should be assessed against the appellant. After judgment was rendered accordingly, the appellant filed its Motion for a New Trial which was overruled and this appeal follows:

Appellant assigns as error that the court below erred in overruling its Motion for a New Trial. The ground for a new trial urged by appellant was that the decision of the court is contrary to law.

There is no dispute in this case as to the facts, since the appellant and appellee filed an Agreed Statement

of Facts, and all exhibits were admitted and read into evidence without objection.

This stipulation of facts shows the following: Appellee, Ruby Lois Sparks, and her husband, Roy Sparks, on July 10, 1952, executed a promissory note for $320.00 to the appellant corporation which is duly incorporated and licensed in Indiana under the Indiana Industrial Loan and Investment Act. On the same day Ruby and Roy entered into an agreement hereinafter referred to as appellant's Exhibit No. 1, which is herein set out:

"In consideration of any loans or advances that you may now or hereafter make to either of us, or in consideration of any notes or contracts that you may now or hereafter purchase from either of us, and for the purpose of enabling either of us to obtain credit from you:

Each of us hereby guarantees and as surety individually promises the prompt payment at maturity of any and all indebtedness upon which either of us now is or may hereafter become obligated or bounden to you either as principal, guarantor, surety, endorser, co-maker, or assignor on any and all notes or contracts executed, assigned, or sold to, or discounted with you by either of us and endorsed with recourse, partial recourse, repurchase, partial repurchase, or optional repurchase; Each of us hereby agrees that each shall be bound as principal and in the same degree and to the same extent as any one of us upon any obligation of any nature whatsoever, whether direct or indirect, in respect of which any one of us shall become obligated to you; and the signature of any one of us upon any instrument or document evidencing any such obligation as hereinabove described shall be taken and deemed to be the joint and several signatures of each of us;

Each of us hereby appoint, makes, and designates each of the others his attorney-in-fact and agent for and on his behalf and in his place and stead to obtain loans from you, to receive the proceeds of such loans, and to make, execute and de-

liver to you any notes and renewal notes evidencing indebtedness to you, and any chattel mortgage, assignment, contract, or other written instrument covering or pertaining to any property owned by any one of us individually, jointly, or in common with any one else to secure the repayment of any indebtedness upon which any one of us now is or hereafter may become obligated or bounden to you;

Each of us hereby agrees that the individual signature of any one of us shall be construed to be his signature in his capacity as such agent as well as individually;

Each of us hereby waives presentment and demand for payment, protest and notice of protest for nonpayment and relief from valuation and appraisement laws; consents that extension of time of payment be granted to any of us or any obligor of any notes, contracts, or other evidence of indebtedness executed or assigned to you by any of us without notice to and without releasing the liability of any of us; and waives notice of acceptance of this agreement and of all things done pursuant to this agreement;

Each of us hereby agrees to pay all costs and expenses, including attorney fees, incurred by you in enforcing any obligation of any of us;

Each of us hereby agrees that it shall not be necessary for the holder hereof to resort to legal remedies against any one or all of us before proceeding against any other of them, and that no release of one or more of us, whether by operation of law or by any action of the holder of this agreement, shall release any other of us;

Each of us hereby agrees that all the terms and provisions of this agreement shall be and remain in every particular available to your successors and assigns, and shall be and remain fully binding upon all successors and assigns, including heirs, executors and administrators of each of us; but this agreement shall terminate after thirty (30) days following receipt by you from any of us, by registered mail with return receipt, of notice of termination provided, however, that such termination shall not affect your rights arising from any

transaction between you and any of us prior to the expiration of such thirty (30) day period.

Each of us hereby ratifies and confirms all that any one of us may do or perform hereunder either for himself individually, or in any other capacity for any one or all of us;

Each of us hereby agrees that the masculine singular pronoun wherever used herein shall mean and include both feminine and plural pronouns wherever applicable.

Dated this 10th day of July 1952"

In order to obtain this loan, Roy executed a chattel mortgage on a 1948 two-door Oldsmobile automobile and a 1948 Three Star General House Car, signing his name and the name of his wife by Roy Sparks, agent. Ruby did not at that time give her husband any specific permission to sign her name, and did not receive any benefit from the loan. Neither did she have any knowledge of the execution of the note nor the mortgage.

The appellee Ruby never revoked nor attempted to revoke the said agreement. Roy and Ruby were divorced on November 29, 1954. Roy had paid $143.00 on said note but refused to pay the installment due on February 4, 1954. By reason of the default, according to the contract the entire amount became due. In April of 1954, the appellant corporation obtained possession of the automobile and the house car and sold the same at a private sale without notice for $165.00, leaving a deficiency of $1,292.14.

The primary question confronting this court is whether or not the Exhibit No. 1 above set out is a valid and binding agreement upon the appellee. The appellant contends that it is an absolute and continuing guaranty, that it was binding upon the appellee at the time the defendant Roy executed a promissory note and a chattel mortgage to secure said note and signed

the name of appellee Ruby to said note and said mortgage as agent pursuant to the terms of said absolute and continuing guaranty.

Appellee contends that said Exhibit No. 1 is not an absolute and continuing guaranty and was signed only in order to obtain a $320.00 loan from appellant, which loan was repaid in full; and that Roy who was appellee's husband at the time, conspired with appellant to attempt to use said Exhibit No. 1 to obtain a new loan five times larger than the original one by signing appellee's name and attempting to bind her and a certain 1948 Oldsmobile along with a 1948 Three Star General House Car; that appellee knew nothing of this; that appellee did not even know the contents of said Exhibit No. 1 nor had ever had a copy of same; and that appellee received none of the proceeds of the loan so could not be deemed to have ratified it.

Appellee further contends that Exhibit No. 1 is not binding upon appellee as to anything except possibly the note of July 10, 1952, of which it was a part, and which has since been paid in full, and was extinguished by said pay-off. With its demise the appellee had no further connections with transactions entered upon by and between appellant and Roy Sparks.

We are unable to agree with appellant's theory that Exhibit No. 1 is a "continuing guaranty." A guaranty requires a third party (the surety or guarantor) who promises to pay the debt or default of another (the obligor) which is owing to the obligee.

> "A guaranty is an independent contract, by which the guarantor undertakes in writing, upon a sufficient consideration, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person, who is primarily liable to pay or perform." *Clanin* v. *Esterly Harvesting Machine Company*

(1889), 118 Ind. 372, 21 N. E. 35. See also *Hess v. J. R. Watkins Medical Co.* (1919), 70 Ind. App. 416, 123 N. E. 440; *Bailey* v. *Miller* (1910), 45 Ind. App. 475, 91 N. E. 24; *Stewart* v. *Knight & Jillson Co.* (1904), App. 71 N. E. 182, affirmed 166 Ind. 498, 76 N. E. 743; *Town of Sullivan* v. *Cluggage* (1898), 21 Ind. App. 667, 52 N. E. 110.

In the instant case, even if we could consider the Exhibit No. 1 as a legal and binding instrument, we can not consider it as a "continuing guaranty" because the instrument shows on its face clearly that the parties are "guaranting" if anything to pay *their own* debt—not the debt or obligation of a third party. Our examination of all cases cited by appellant in support of its theory of a "continuing guaranty" reveals that in each case the guaranty was made on behalf of the debt or obligation of some other person.

Having failed, therefore, to discharge its burden of convincing this court that the instrument in question is a "continuing guaranty," appellant's entire argument is of no avail in this appeal. Under Supreme Court Rule 2-17, errors not supported by cogent citation of authorities in the argument portion of appellant's brief are deemed to be waived. *Scoville et al.* v. *Hawkins et al.* (1959), 129 Ind. App. 607, 159 N. E. 2d 307; *Wright* v. *State* (1958), 237 Ind. 593, 147 N. E. 2d 551. We must assume the judgment of the court below to be correct unless appellant can convince us otherwise. This court will not ordinarily search the record to find reversible error. *Flanagan, Wiltrout and Hamilton,* S. 2783 supplement, page 115, and cases therein cited. Especially when it appears that substantial justice has been done and the case fairly tried on its merits, we are not inclined to brief the case and serve as a proponent for appellant. We

may however search the record to reaffirm the judgment. *Flanagan, Wiltrout and Hamilton,* S. 2783, p. 364, and cases therein cited.

In this case, it is apparent from the evidence that the instrument labeled Exhibit No. 1 was drawn and executed at the same time the original note of ▮ $320.00 was signed. Thus, it was a contemporaneous instruction. Since it was executed for the same purpose, and in the course of the same transaction, it must be considered together with the note as one instrument. 7 Am. Jur. Bills and Notes, §62, page 820; *Nat. City Bank* v. *Kirk* (1926), 85 Ind. App. 120, 127, 134 N. E. 772; *Bundrant* v. *Boyce* (1911), 47 Ind. App. 253, 256, 91 N. E. 968, 92 N. E. 126. When the note was paid in full, the debt and obligation was discharged. Burns' §19-801, 1950 Repl.; *Egbert* v. *Egbert et al.* (1956), 235 Ind. 405, 132 N. E. 2d 910. It was stipulated that the $320.00 debt was paid in full. The discharge of that obligation, therefore, likewise discharged the contemporaneous agreement, as it was part of the same transaction.

If the agreement is not considered as a part of the loan, but as a separate and independent undertaking, it cannot stand because no consideration was given for it.

Since it was contemporaneous with the $320.00 loan, the agreement can only refer to it, and not to any new or independent transactions, as such were not intended by the parties at the time they borrowed the $320.00. The agreement, therefore, could relate to extensions, renewals, etc., of the $320.00 loan, but certainly not to the $1,536.00 loan made by Roy Sparks individually. Thus, it makes no difference that appellant may argue that the agreement was still in existence and in force on November 3, 1953, when the $1,536.00 loan was

made, as the $320.00 loan was to be paid off in 20 months, or by March, 1954. (The stipulation does not say when the $320.00 loan was paid. It merely states it was paid in full.)

Courts, with a discerning eye have long scrutinized agreement between lenders and borrowers. It is said in 13 C. J. at page 409:

> "Where one party has taken advantage of another's necessities and distress to obtain an unfair advantage over him, and the latter, owing to his condition, has incumbered himself with heavy liability or an onerous obligation for the sake of a small or inadequate present gain, equity will relieve him. So agreements between lender and borrower are closely scrutinized, because they are not always at arm's length." See also cases cited therein.

Such an instrument as the one in the instant case in the hands of borrowers is surely very tempting. At first impression it would seem to be an expedient device of especial convenience to a husband or wife. It would allow one spouse to borrow additional sums of money without necessitating both going to the lender and executing loans, mortgages, etc. But, after a more thorough examination it is evident that such an instrument in the hands of those in financial distress could give birth to evil opportunities and could make easy prey of a close relationship, such as that of a husband and wife, where business reasoning and judgment is often substantially and adversely affected by emotional stress.

Indiana courts, probably more strongly than courts of many other states, have long favored freedom of individuals to contract. In general, the law usually encourages agreements couched in such language as to spare weak human nature the

strain of temptation and to discourage fraud and mis-representation. See 12 Am. Jur., at page 68. Agreements generally should be void of entanglements which are not of an apparent nature. We find that agreement in the instant case is pregnant with opportunities for misuse. The appellant by experience, should have been immediately on guard against any probability that such misuse or breach of trust was developing. The appellant had the advantage and could have, had it used due diligence, prevented that apparent misuse of authority.

It is apparent to this court that the instrument in question was prepared and furnished by appellant purely for its own convenience. We are utterly amazed to think that any reputable lending agency would use or require an instrument in making small loans to in-dividuals neither engaged in business nor expressing at the time of making the loan a need for the extension of additional credit.

In order to protect innocent victims of a situation such as is involved in this case, we would have liked very much to have been able to state flatly that the instrument used by appellant in this case as a so-called "continuing guaranty" is an il-legal and void instrument being contrary to public pol-icy—however, we can conceive of certain circumstances under which if used in strict accordance with the intent of the borrowers, such instrument could be classed as legal and binding upon the parties thereto, not as a continuing guaranty but as a power of attor-ney. Such, however, is not true in the instant case because considering the evidence most favorable to appellee and the inferences to be derived therefrom, we can draw no inference that Ruby intended to give Roy her power of attorney to borrow an additional sum of

money for his own use in an entirely new and different transaction to bind her to pay for his obligation upon his default.

Since the only error complained of by appellant was that the decision was contrary to law, and because we are unable to determine that appellant under the evidence was denied by the court below judgment to which it was clearly entitled, we feel that the judgment should not be disturbed.

Judgment is hereby affirmed.

Cooper, Myers, Ryan, JJ., concur.

NOTE.—Reported in 172 N. E. 2d 899.