**ORANGE–CO., INC.,**
**Defendant-Appellant,**

v.

**Elizabeth L. BROWN, Plaintiff-Appellee.**

**No. 1–278A51.**

Court of Appeals of Indiana,
First District.

Aug. 6, 1979.

Henry N. Leist, Naville, Crumbo, Leist & Naville, New Albany, Hamilton J. Teaford, Teaford & Bernard, Columbus, Ohio, for defendant-appellant.

Robert H. Kempf, Jr., Jeffersonville, David B. Hughes, David L. Walsh, Hughes & Hughes, Indianapolis, for plaintiff-appellee.

LYBROOK, Judge.

Defendant-appellant, Orange-Co., Inc. (hereinafter referred to as Orange) brings this appeal from a judgment in favor of plaintiff-appellee, Elizabeth Brown (Lessor), who brought suit for specific performance of a lease guaranty executed by Orange as guarantor, damages resulting from the breach of the lease and the guaranty.

Orange-Co., Inc., the defendant-appellant in this action, was a successor corporation to National Fast Food Corporation, who entered into the guaranty agreement which is the subject of this action, on May 27, 1970, the day following the execution of a lease agreement between Lessor Elizabeth Brown and Lessee Arthur Treachers.

On October 30, 1970, over five months after the execution of the lease agreement and the guaranty, Lessor and Lessee entered into an agreement to secure a loan of $55,000 and Lessee executed a note in the amount of $55,000 with an interest rate of 10½% per annum; Lessee and Lessor then executed a mortgage of the property to the Portland Federal Savings and Loan Association to secure payment of the note.

Five individuals completely unconnected with the guarantor on the lease (Orange), executed guaranties of the payment of the note contemporaneously with the note and mortgage. The mortgage does not contain any reference to Orange, the guarantor on the lease, or to its guaranty, nor is there any evidence that Portland Federal was aware of the guaranty on the lease since it was not recorded.

Orange was unaware of the negotiation of the note and mortgage until March, 1975, some four and one-half years after its execution, when it was advised that Lessee was in breach of the mortgage note by Lessor.

Lessee defaulted on the mortgage and the mortgage was foreclosed. Because neither Lessor nor Lessee answered, a default judgment was entered against Lessor and Lessee, as mortgagors, and against the five individuals as co-guarantors on the mortgage. The real estate was ordered sold.

The real estate was sold at sheriff's sale for the sum of $54,525. Lessor, through her attorney, bid $54,259.75 in an unsuccessful attempt to preserve her interest in the fee. Lessor then brought suit against Orange for damages resulting from Lessor's loss of the real estate.

On June 21, 1977, the trial court entered judgment that Lessor was damaged by the loss of the fee interest and ordered Orange to pay Lessor damages in the amount of $54,298.51 and attorneys' fees of $17,000. Both parties filed separate motions to correct errors which were overruled by the trial court who also granted remitter to Orange in the amount of $225.49. The parties each filed a second Motion to Correct Errors, both of which were overruled by the trial court on December 1, 1977, and this appeal follows.

Orange raises the following issues for our review:

(1) Whether the Lessee was obligated under the terms of the lease to make payments on the mortgage and note executed subsequent to the lease.

(2) Whether Orange guaranteed any payments other than those provided by the lease.

(3) Whether the parties to the lease and guaranty of the lease intended that such guaranty would include payment of the mortgage and note entered into by Lessee subsequent to the lease.

(4) Whether Orange is liable for Lessee's default in the repayment of the mortgage and note.

(5) Whether Lessor failed to mitigate her damages which failure increased her injury or loss.

(6) Whether the attorneys' fees were excessive and unreasonable.

The issues presented by Lessor in her cross-errors assigned on appeal include:

(7) Whether the trial court's judgment was inadequate.

(8) Whether the trial court's judgment for attorneys' fees was inadequate.

The appellant herein has set out several issues in its brief which differ from those

enunciated in its Motion to Correct Errors, has argued several without benefit of citation and has addressed others by means of citation *sans* argument. It is only because the first four issues raised by the appellant may be consolidated into a single argument, that this court has decided to reach the merits of this appeal rather than affirm the trial court's judgment for failure to comply with the Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

The first four issues of Orange's Motion to Correct Errors and its brief on appeal challenge the trial court's finding that Orange guaranteed payments other than those provided by the lease, and was therefore obligated to make payments on the mortgage and note which were executed subsequent to the lease and guaranty agreements. Orange argues that the trial court's finding was contrary to law and the evidence.

■ When a judgment is attacked as being contrary to law, this court on appeal may neither weigh the evidence nor consider credibility of witnesses. We may consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. It is only where the evidence and inferences so considered lead to but one conclusion and the trial court has reached a contrary conclusion that the judgment will be disturbed as contrary to law. *Reynolds v. Meehan,* (1978) Ind. App., 375 N.E.2d 1119; *Bureau of Motor Vehicles v. Penecostal House of Prayer, Inc.,* (1978) Ind., 380 N.E.2d 1225.

■ In considering the alleged errors, we must keep in mind that a guaranty is an independent contract. In such contract, the guarantor undertakes in writing, upon a sufficient consideration, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform, *Indianapolis Morris Plan Corp. v. Sparks,* (1961) 132 Ind.App. 145, 172 N.E.2d 899. As in the case of any other contract, guaranties should neither be so narrowly or technically interpreted as to frustrate the obvious design of the parties,

nor be so loosely interpreted as to relieve the guarantor, as obligor, from a liability fairly within the scope or spirit of its terms. *Pierce v. Yochum,* (1975) 164 Ind.App. 443, 330 N.E.2d 102; *House v. Lesow,* (1975) Ind.App., 339 N.E.2d 86.

■ The contract of a surety or guarantor is to be construed according to the intention of the parties which is to be ascertained from the instrument itself read in the light of surrounding circumstances. Our courts have held that instruments of this sort should receive a liberal interpretation, which means that words should not be forced out of their natural meaning, but that they should receive a fair and reasonable interpretation so as to attain the objects for which the instrument is designed and the purposes to which it is applied. *Merchants National Bank & Trust Co. v. Winston,* (1959) 129 Ind.App. 588, 159 N.E.2d 296; *Bowyer v. Clark Equipment Co.,* (1976) Ind.App., 357 N.E.2d 290.

■ The Indiana rule holds that the nature and extent of a guarantor's liability depends on the terms of his contract, *Hamilton v. Meiks,* (1936) 210 Ind. 610, 4 N.E.2d 536; and his liability will not be extended by implication beyond the terms of his contract. *Markland Mining & Manufacturing Co. v. Kimmel,* (1882) 87 Ind. 560. A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. *Markland Mining & Manufacturing v. Kimmel, supra.* Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties. *Yater v. Judah,* (1860) 15 Ind. 228. The Indiana rule conforms with the general rules governing contracts of suretyship and guaranty set out in *Stearns: Law of Suretyship,* Elder's Revision, (5th Edition, 1951) § 4.2 Construction of Contracts of Guaranty; and Vol. 10 *Williston on Contracts*: Contracts of Suretyship and Guaranty § 1239, (3d Edition, 1970).

■ In 38 *C.J.S.* Guaranty § 50, Leases, we find, at page 1203:

"In determining the nature and extent of the guarantor's liability under a guaranty of payment of rent or the performance of other provisions of a lease, the general rules of construction apply, and the contract will be strictly construed to impose only those burdens clearly within its terms. Where such is the intention of the parties, the guaranty applies only to rents accruing after its execution and prior to the termination of the lease by act of the landlord; and under some circumstances the guarantor may be liable where the tenant holds over after expiration of the original term."

■ The guaranty on the lease, omitting formal parts, reads as follows:

"FOR VALUE RECEIVED and to induce Elizabeth L. Brown [Lessor] to enter into the foregoing Lease as with Arthur Treacher's of Falls Cities, Inc., as LESSEE, NATIONAL FAST FOOD CORPORATION, a Delaware Corporation, *guarantees to the LESSOR'S*, their heirs, executors, administrators, personal representatives and assigns *full payment of all rent and prompt and full performance of all of the terms, covenants and conditions provided by said Lease to be paid, performed or observed by the LESSEE*, its successors or assigns during the term of said Lease.

Said guaranty by NATIONAL FAST FOOD CORPORATION 'shall remain in full force and effect notwithstanding any assignment or subletting by the LESSEE of its interest in the demised premises and *further waives notice of any such assignment or subletting and consents to the same and agrees to be fully bound by the terms and conditions of the within guaranty notwithstanding any such assignment or subletting.*

IN WITNESS WHEREOF, the undersigned corporation has caused this Guaranty to be executed by its respective proper officers hereto duly authorized and its Corporate Seal to be affixed this 27th day of May, 1970." (Emphasis Added.)

From the language cited above, it is clear that the guaranty and lease agreements are incorporated and should be read together in construing the intention of the parties to the guaranty. *Smith v. Ostermeyer Realty Co.*, (1935) 102 Ind.App. 164, 197 N.E. 743; *Indianapolis Morris Plan v. Sparks, Corp.*, (1961) 132 Ind.App. 145, 172 N.E.2d 899.

The lease agreement was to commence "on the 90th day after date that Lessee obtains a bona fide mortgage loan commitment for construction of the proposed building." Under the lease, Lessee was to pay (1) all occupational licenses, state, hotel and restaurant commission licenses and other licenses necessary in the operation of the business; (2) all utility services provided to the premises; (3) all sales and use taxes due as a result of business conducted on premises, personal property taxes assessed against personal property situated thereon, and all real estate taxes assessed and collected against the subject property. Included in the lease is an agreement between Lessor and Lessee that Lessee may construct such buildings on the premises as may be necessary for the operation of Lessee's business, with the understanding that at the conclusion of the lease term any such building would belong to the Lessor.

In this case, Orange was not a party to the mortgage nor did Orange agree to underwrite the note which was guaranteed by five individuals not connected with Orange in any manner. While the necessity of Lessee's obtaining a mortgage in order to construct a building on the leased premises is contemplated by the language of the lease, there is no evidence from which it can reasonably be inferred that Orange, after guaranteeing the lease, assumed subsequent liability as a guarantor on the mortgage and note.

Further, Lessor voluntarily became a party to the mortgage agreement executed October 30, 1970, between Lessee and Portland Federal Savings and Loan Association. Lessor agreed that Portland would have a first and prior lien on the real estate as well as the improvements as security for the mortgage loan. It was Lessee's default on

the mortgage, which Orange was not a party to and which did not refer to Orange or the lease guaranty in any manner, that resulted in Lessor's loss of the fee.

The Indiana Supreme Court has held that any binding change in the principal's contract to which the guarantor or surety does not consent will discharge the latter from liability. Sureties are not to be made liable beyond their contract and any agreement with the creditor which essentially varies the terms of the contract, without the assent of the surety, will discharge him from responsibility. *Lutz v. Frick Co.*, (1962) 242 Ind. 599, 181 N.E.2d 14.

While the language of the lease and guaranty thereon clearly make Orange liable to Lessor for the Lessee's default on rental payments, in the absence of any evidence of intent by Orange or the other parties to the lease that Orange guarantee the mortgage and note, we hold that the judgment of the trial court on this issue is contrary to law.

For the reasons hereinabove stated the decision of the trial court is hereby reversed and remanded with instructions to the trial court to enter judgment in favor of Orange.[1]

Reversed and remanded with instructions.

LOWDERMILK, P. J., and ROBERTSON, J., concur.

---

1. In light of our decision reversing the trial court's judgment, we decline to address the other issues raised by the parties, and the appellee's motion for attorneys' fees on appeal is denied.